# Dewey, Appellant, *v.* Great Lakes Coal Company.

*Mines and Mining—Mining rights—Dumping waste on surface —Damages.*

Where an owner of land conveys the coal thereunder with general mining rights and "with the free right of use of surface so far as necessary for the purpose of mining," the grantee may dump the waste or refuse of the mine at the mouth of the mine entrance, and use as much of the surface for that purpose as is strictly necessary and reasonable, without liability to the owner of the surface in damages for such use.

Argued May 1, 1912. Appeal, No. 88, Oct. T., 1912, by plaintiff, from judgment of C. P. Armstrong Co., Dec. T., 1910, No. 244, on verdict for defendant in case of Edward W. Dewey v. Great Lakes Coal Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Tresspass to recover damages for injuries to land. Before PATTON, P. J.

At the trial the jury returned a verdict in favor of the defendant. Subsequently the court directed judgment to be entered on the verdict, PATTON, P. J., filing the following opinion:

The evidence in this case took a wide range for three reasons. First, because the plaintiff set up the wrong standard for the measurement of damages; second, by refusing to put in evidence the agreement which is the basis of the suit, and third, by his theory that a different standard of duty was imposed upon the defendant in regard to coal mined from under the land described in the agreement, and that from under other lands of defendant. The facts are few and without serious contradiction.

In 1901 Edward W. Dewey, the plaintiff, purchased about 4,000 acres of land in Brady's Bend township, Armstrong county, for the sum of $65,000.

On the 13th day of September, 1902, he conveyed to Emmett Queen, for the sum of about $32,000, the coal underlying part of this land by a deed containing the following provision: "All of the coal in and underlying four hundred and twenty-one and 55-100 acres of land in Brady's Bend township, Armstrong county, with the right to mine and remove all said coal without supporting or protecting the overlying soil or surface and without liability for damages to the said lands or anything therein or thereon, by reason of the mining and removal of said coal, and with the right to mine drain, ventilate and transport this or any other body of coal, through or over the several above described tracts of land, and with the free right of use of surface so far as necessary for the purpose of mining, draining and ventilating this and other coal, and of erecting, maintaining and operating thereon all buildings and structures necessary therefor, but no house shall be erected in the valleys, nor shall any building on any of the several described tracts of land be disturbed in erecting or operating said buildings or structures on the surface."

On the 5th day of October, 1904, Emmett Queen conveyed said coal and mining rights to the Great Lakes Coal Company, the defendant.

The coal thus conveyed was bounded on the north by Sugar Creek and on the west by Pine Run. On Sugar Creek the Great Lakes Coal Company opened a coal mine called the Snow Hill mine, built a tipple and thereon conveyed the coal to the Western Allegheny Railroad, the trains of which run through the Sugar Creek valley. A large amount of refuse or gob was taken from the mouth of the mine, and dumped at its entrance. On Pine Run another entry was made, called the Pine Run mine, from which a tramway was

constructed down Pine Run to Sugar Creek, where the coal was also loaded on the cars of the Allegheny & Western Railroad, and the refuse was taken from the mine and dumped along the eastern side of the hill This dump encroached upon a public road that occupied the eastern side of the Pine Run valley and upon a small stream that flowed down it.

The damages complained of was that these dumps of gob covered about eleven acres of land, a strata of which was composed of limestone; that in dumping it over the hill it had destroyed some trees and obstructed a private road; that the coal company had removed the public road from the eastern side of Pine Run to the western side thereof, and had changed the course of Pine Run, which had been encroached upon by the gob dumped from the mine.

We think it would have been justifiable to have taken the case from the jury for want of any relevant evidence as to the true measure of damages. As to the eleven acres of mineral limestone covered by the gob pile, no attempt was made to prove its market value, but R. H. Wilson, an expert witness on part of the plaintiff testified that each acre, in round numbers contained about 50,000 tons of limestone, worth ten cents per ton, thus making the damages $55,000. This was the method pursued in computing the value of mineral limestone in the case of Reading & Pottsville R. R. Co. v. Balthaser, 119 Pa. 472. In regard to it, the Supreme Court said, "It is almost unnecessary to argue the incompetency of that kind of testimony. Its character and effect was fully pointed out in the opinion of this court in the case of Searle v. L. & B. R. Co., 33 Pa. 57. We there held that the value of the land as coal land could be allowed, but not the value of the coal itself underneath the road. We do not measure the value of the land by such facts. Land may have $4,000 worth of coal per acre in it and yet sell at $40.00 per acre."

In Sarle v. L. & B. R. R. Co., 33 Pa. 57, the Supreme Court designated the measuring of damages by the value of the minerals underlying them as "arbitrary and fanciful." That apt designation will apply in this case. The testimony showed that the plaintiff owned 4,000 acres of land and that the outcropping of limestone extended six miles. If one acre was worth $5,000, the 4,000 acres would be worth $20,000,000. Or if covering the outcrop for 1,600 feet damages the plaintiff $55,000, if the entire outcrop had been covered it would damage him $2,000,000. The figures show the danger of expert testimony.

The testimony showed that the gob carried from the mine had covered a few small hemlock shrubbery, growing on the hillside, and had partly closed a small private road that might cause a tenant of plaintiff to drive a small distance out of his way. The measure of damages in such cases is pointed out in Robb v. Carnegie, 145 Pa. 324, and Chase v. Clearfield Lumber Co., 209 Pa. 422. No proof was given upon which the jury could base a verdict as to the amount of damages sustained.

As to the removal of the public road and as to the straightening of the stream, we left these questions to the jury, and they found the plaintiff sustained no damages. In that finding we concur.

But, waiving these matters, we prefer to decide the case upon the broad principle of law that the plaintiff had shown no right to recover.

As we travel through our valleys and see limestone, stripped, sand stone quarried, coal, fire-clay, and iron-ore mined and oil and gas wells drilled, and see the waste material dumped where the mining operations are carried on without, in our knowledge or from any case in the books the grantee or lessee being held for damages, we cannot believe that the claim of the plaintiff in this case is based upon a sound legal foundation. To enforce it will startle the mining world, and be contrary to the settled custom of the country. As said by Mr. Jus-

tice WILLIAMS in Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 302, when a dispute had never reached the courts, although certain mining claims had been asserted for 30 years: "This cannot be accounted for except upon the theory of the general concession of the right by all parties concerned." The inquiry naturally arises, if not dumped at the place of operation what would be done with it. If Mr. Dewey had insisted that a clause should be put in his agreement that the gob should not be deposited on his property, would he have been able to sell his coal? Or if that was his understanding of the contract, why did he stand by for years and allow this large pile of refuse to be deposited upon his land? The only answer can be that he well knew, both from the express and implied conditions of his agreement, that his grantee had the right to deposit the gob at the pit mouth.

After an exhaustive research we have not been able to find any authority that bears directly upon the case now before us, but it can be decided upon the general principles of law running through the books. When the soil belongs to one person and the mine to another, the right to work the mine carries with it the use of so much of the surface as is strictly necessary and reasonable. "As against the owner of the surface, each of the several purchasers (of the minerals) would have the right, without any express words of grant for that purpose, to go upon the surface, to open a way by shaft, or drift, or well, as might be necessary to operate his estate and to remove the product thereof." Chartiers Block Coal Co. v. Mellon, 152 Pa. 286.

How are we to determine the extent of the surface to be used by the grantee of the coal? We say by the necessity therefor, by the custom of the country, and by the construction put upon the contract by the parties themselves, by a long acquiescence.

It is absolutely necessary in opening and operating a mine that something be done with the waste or refuse.

The custom of dumping it, at or near the mouth of the mine, is a custom so deeply imbedded in the bituminous coal fields of Pennsylvania, that it would be safe in saying that it is a usage of the trade.  That being the uniform practice not only in general, but of the parties to this contract, for many years, the contract must be construed according to popular understanding.

The grantee of the coal conducted his mining operations carefully, in the ordinary manner, without wilfulness, malice or negligence, and in our opinion the deposit of the refuse was necessary for the proper enjoyment of his rights, both under the terms of the written agreement, and as incidental to his right to mine and remove the coal.

And now, February 27, 1912, judgment directed to be entered upon the verdict upon payment of the jury fee.

*Error assigned* was in entering judgment on the verdict.

*Harry C. Golden* and *C. E. Harrington,* for appellant, cited: Turner v. Reynolds, 23 Pa. 199; Baker v. Pittsburg, Etc. R. R. Co., 219 Pa. 398; Marvin v. Brewster Iron Mining Co., 55 N. Y. 538; Hooper v. Coal Mining Co., 95 Alabama 235 (10 So. Repr. 652).

*John H. Painter,* for appellee.

PER CURIAM, May 13, 1912:

We have not been persuaded by any of the assignments of error that the judgment in this case ought to be disturbed, and it is affirmed on the opinion of the learned president judge of the court below directing it to be entered on the verdict.