CANZADA POST *et al. v.* GORDON E. BAILEY *et al.*

(No. 6844)

Submitted March 18, 1931.   Decided April 14, 1931.
(Rehearing denied July 24, 1931.)

*John B. Smith* and *Edward G. Smith,* for appellants.
*W. T. Ice, Jr.,* and *Fred O. Blue,* for appellee Bailey.
*D. W. McDonald* and *Ware & Ware,* for other appellees.

MAXWELL, JUDGE:

Plaintiffs appeal from a decree of the circuit court of Barbour County sustaining demurrers to their bill and dismissing the same.

Two major questions are involved. The first pertains to haulage of coal. It arises in this way. In 1900 John C. Cleavenger and wife conveyed to Henry G. Davis all the coal underlying a tract of 330¾ acres of land in Barbour and Taylor Counties. The deed contains the following paragraph:

> "It is further expressly understood and agreed by the parties of the first part that the party of the second part his heirs and assigns shall have the right to enter upon and under said land and shall have the privilege of ingress and egress under, over and through said land together with the right to mine and remove all of said coal, to remove upon and under said land the coal from and under other lands together with all necessary and convenient rights of . ways through and under such land with necessary

drainage, ventilation and ventilating shafts to remove all of said coal upon or under said land and to remove the coal under neighboring land without any liability for damage to water, surface or anything thereon or therein by reason thereof.''

In 1913 John C. Cleavenger conveyed to his daughter, Canzada Post, one of the plaintiffs herein, the said tract of 330¾ acres of land, together with certain other acreage, expressly excepting and reserving all coal and other mineral rights and privileges which had theretofore been disposed of by the grantor.

Through mesne conveyances the defendant, Gordon Bailey, has come into ownership of 42.82 acres of the coal conveyed by John C. Cleavenger to Henry G. Davis as aforesaid; and the said Bailey is operating the said parcel of coal conjunctively with two other adjacent parcels of 39.66 acres and 74 acres, respectively, no portion of either of which is embraced within the said conveyance of Cleavenger to Davis. In the operation of these properties the said Bailey is transporting coal not only from the John C. Cleavenger parcel but also from the other two said parcels through an opening which he has made in the Cleavenger coal. The coal thus transported to the pit mouth at the surface of the Cleavenger land, now the property of the plaintiffs, is carried thence by an incline on the surface to the tipple at the railroad siding several hundred feet distant from the pit mouth.

Plaintiff George M. Post is the husband of Canzada Post, and plaintiff Clay C. Post is their son and only child. They admit the right of Bailey to remove the coal through and over the surface of their property from the parcel of 42.62 acres aforesaid, the same being a part of the coal sold and conveyed by John C. Cleavenger and wife to Henry G. Davis, but they deny any right in Bailey to remove and transport in said manner the coal from the other two adjacent tracts. The prayer of the bill in this particular is that Bailey be enjoined from the further transporting of coal from said two outside parcels through and over the said John C. Cleavenger tract, and that said Bailey and Isaac Taylor, his immediate grantor, be required to respond in damages, and to account to the

plaintiffs for the use that has thus been made of the Cleavenger tract in the transporting of coal from the other two tracts.

With reference to the above quoted paragraph of the deed of John C. Cleavenger and wife to Davis, it is urged on behalf of the plaintiffs that the same does not constitute a grant of the privileges therein enumerated, but that at the most the said paragraph constitutes a mere personal covenant in so far as it pertains to the transporting of coal from other lands, that is, a covenant in gross, not a covenant running with the land. Defendants take the position that the above quoted language in the Cleavenger-Davis deed must be read in connection with the granting clause of said deed, and that thus considered the said paragraph constitutes a grant of the rights and privileges therein enumerated. They rely, among other cases, upon *Waldron* v. *Coal Company*, 61 W. Va. 280, and *Lumber Co.* v. *Sheets*, 75 W. Va. 21.

As to whether the court might be warranted in construing the said language of the Cleavenger-Davis deed as constituting a grant, we express no opinion, as a decision of that point is not necessary to a decision of the case on its merits. We take the position that the said language constitutes at least a covenant running with the land (coal) granted by Cleavenger to Davis, and that under the actual terms of that covenant the assignees of Davis have the right to transport coal from other tracts through the opening in the Cleavenger coal to the pit mouth, and thence over the incline, on the Cleavenger surface, to the tipple at the railroad siding. The query is propounded by plaintiffs, "May a covenant in a deed impose an easement of. way over land retained by the vendor for the benefit of land not deeded and not owned by any party to the deed and covenant?" Apposite to this query we direct attention to the fact that the covenant under discussion does not impose an easement of way over and through the land of the grantor for the benefit of land (coal) not owned by the grantor, but it imposes an easement for the benefit of the estate granted. The right to remove other coal over and through the premises was an element of value entering into the consideration paid by the grantee to the grantors for the estate granted, and the rights and privileges covenanted for in the deed. The evident

intent of the parties, as disclosed by the language employed by the grantors in the covenant under discussion, was that the coal granted was to be operated in connection with coal underlying other lands. It must be considered that the coal granted was of greater value with the concomitant right of operating the same along with coal from other lands, than it would have been without such right. The right of haulage was appurtenant to the coal granted, and was to be employed in the operation of said coal in conjunction with coal from other lands. Principles recognized and applied by this Court in the case of *Jones* v. *Island Creek Coal Company*, 79 W. Va. 532, are decisive and controlling of the proposition now under consideration. Syllabus 1 of that case holds: "If an easement granted be in its nature an appropriate and useful adjunct of the dominant estate conveyed, having in view the intention of the grantee as to the use of such estate, and there is nothing to show that the parties intended it as a mere personal right, it will be held to be an easement appurtenant to the dominant estate." Cases cited in that opinion are pertinent. They sustain the propositions: (a) An easement may be created by covenant or agreement as well as by grant; (b) whether an easement is appurtenant or in gross is to be determined by the intent of the parties as gathered from the language employed, considered in the light of surrounding circumstances; (c) an easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. See also Washburn on Easements and Servitudes (4th Ed.) pp. 43 and 45; Jones on Easements, secs. 47, 48 and 106. Multiplication of authorities is not necessary.

The second major question pertains to four miners' houses and an office, erected by defendant Taylor and now used and occupied by defendant Bailey in connection with the operation of the Cleavenger coal and the said two adjacent tracts, the said buildings being situated on a portion of the said Cleavenger tract of 330¾ acres whereon and over which a right of way for railroad purposes was conveyed to the Baltimore & Ohio Railroad Company by the plaintiffs by deed dated May 7, 1919. Plaintiffs take the position that the erection and occupation of the said buildings upon the easement·or right

of way of the railroad company constitutes an enlargement of said easement and consequent increase of burden upon the servient estate. They pray that the defendants Taylor and Bailey be required to account to the plaintiffs for the use and occupation of said buildings, and that the said defendants be restrained and enjoined from such further use and occupation.

We are of opinion that substantial basis is lacking for plaintiffs' contention that the right of defendant Taylor to erect, and of defendant Bailey to use and occupy, the said buildings must be considered and measured within the limitation of the said grant of right of way or easement to the Baltimore & Ohio Railroad Company for railroad purposes. The record does not disclose any agreement or understanding or arrangement between the railroad company and Taylor or Bailey for the erection and maintenance of said buildings upon said right of way. The circumstance that the said buildings happen to be on a portion of the Cleavenger land over which portion the plaintiffs had granted a right of way or easement to the railroad company is in no wise controlling. The question of the right to build and maintain the said buildings where located must be weighed and determined independently of the said grant of right of way to the railroad company. We must go back to the deed made in 1900 by John C. Cleavenger and wife to Henry G. Davis.

The last paragraph of that deed, being the paragraph next succeeding the one hereinabove quoted, is as follows:

> "It is further understood and agreed that in the event the party of the second part, his heirs or assigns should desire to construct and maintain railroads, tram ways, tipples, houses, or any permanent improvements on or over any part of the above described land, then the party of the second part, his heirs or assigns, shall pay to the parties of the first part, at the rate of forty ($40.00) dollars per acre per each and every acre so used and occupied."

What does this paragraph mean? Plaintiffs say it involves a violation of the rule against perpetuities; that in said covenant "there is no term to buy, and no term to sell, but only

to pay on the happening of an event that may happen within or after 100 years or never''; that by said paragraph ''no estate vested upon the delivery of this deed and that no estate has yet vested, and that it is not certain that any estate will ever vest under it.'' True, the said paragraph itself may not have operated to vest an estate in the grantee and his assigns, but that does not meet the problem. The deed as a whole must be considered in this connection.

By the deed of Cleavenger to Davis we have, first, a definite grant of coal, and, under the covenants set forth in the paragraph hereinabove first quoted, we have, second, necessary provisions for entry upon the premises to mine and remove the coal granted and to transport over and through said premises coal from other lands. Now, just as an easement for transportation of coal from adjoining lands may be created by covenant (discussion *supra*), so may surface rights be created in the same manner. Therefore, upon the delivery and acceptance of the said deed there became vested in the grantee, his heirs and assigns the right to enter upon the Cleavenger 330¾ acre tract of land and do those things reasonably necessary and proper for the mining and removal of the Cleavenger coal, and for the removal of coal from other tracts. We say these rights ''vested'' upon the delivery and acceptance of the Cleavenger-Davis deed because a ''vesting'' takes place when a present right is conferred. To vest means, ''To give an immediate fixed right of present or future enjoyment.'' Bouvier's Law Dict., ''To vest an estate is to give a legal or equitable seisin. An estate 'vests' in a person who is given a present and immediate interest, as distinguished from an interest the existence of which depends on a contingency.'' *In re McClellan's Est.* (Pa.) 70 Atl. 737. Consequently, the right to use sufficient portions of the surface, for the convenient and practical mining and removal of the coal, having vested in Davis, his heirs and assigns upon the acceptance of the Cleavenger deed, there was no contingency upon which the said surface rights thereafter depended. The effect of the said last quoted paragraph of the deed was therefore merely to fix a price of $40.00 per acre to be paid for

the use of so much of the surface as might be employed by the grantee and his assigns under the provisions of the deed.

The rule against perpetuities applies only where, by the terms of an instrument purporting to create an estate, the vesting of the estate is to be, or may be, postponed beyond the period of a life or lives in being, and twenty-one years thereafter (and period of gestation). This rule "forbids the keeping of the title in a state of uncertainty for a period beyond that allowed by law." 21 Ruling Case Law, p. 284. Its immediate object "is to require the vesting of future estates within a limited period of time after their creation and to bar the creation of future interests depending on remote contingencies." Idem, p. 288. The rule "relates solely to the vesting of estates or interests and is not concerned with their possession or enjoyment." 48 Corpus Juris, p. 947. And it "has reference to the time within which the title vests, and has nothing to do with the postponement of the enjoyment." 21 Ruling Case Law, p. 290. In the Pennsylvania case of *Barton* v. *Thaw*, 92 Atl. 312, there is a lucid discussion of the rule under consideration, and the distinction between instances wherein there is an immediate vesting of an estate and those wherein the vesting is attempted to be postponed to an uncertain future date is plainly demonstrated. The court held that a covenant in a deed conveying coal, and providing that if the grantee, his heirs or assigns, should at any time elect to purchase any of the surface of the land under which the coal was situated, the grantors would convey the same to them at a certain price, was a mere option to purchase, which, under its terms, could be exercised at any time, and was void under the rule against perpetuities. The case arose under provisions of a deed executed by Barton to Thompson and Ewing. The said grantees later conveyed the property to Thaw. In the opinion the court discussed the situation in clear and forceful language: "In the present case there is no present fixed right of future enjoyment of any of this land in anybody, under the option. A privilege to acquire such right was given by the Barton deed, but no such right was conveyed thereby. The event upon which the estate is to arise, to-wit, the acceptance of the option to purchase, is

uncertain, being unconfined as to limit of time. The interest created by this option therefore is not vested, but contingent, and is within the rule against perpetuities. In that respect this case differs from one where the owner of land conveys the coal thereunder, with general mining rights and the right to use surface for mining purposes, as in *Dewey* v. *Great Lakes Coal Co.*, 236 Pa. 498, 84 Atl. 913, cited by counsel for the defendants. In a case like that the rights are conveyed by the deed and vest immediately. There a present fixed right of future enjoyment is conveyed, although the right of enjoyment may not be exercised immediately."

Under the foregoing analysis and authorities, there is no basis for injunctive relief against defendant Bailey because of his use and occupation of the said dwellings and office; likewise there is no basis for an accounting in equity by defendants Taylor and Bailey for the use of said buildings.

We are of opinion that the trial chancellor properly sustained the demurrers to plaintiffs' bill.

A procedural question remains. The circuit court upon sustaining the demurrers to the bill allowed the plaintiffs thirty days within which to file an amended bill if they so elected. At a later time, the plaintiffs not having so elected, the court dismissed the bill and made no reservation of right to the plaintiffs to sue at law. The failure of the court to note in the order of dismissal that the said dismissal was without prejudice to the plaintiffs' rights is assigned as error. The case of *Chafin v. Coal & Coke Co.*, 109 W. Va. 453, 156 S. E. 47, is relied on in support of the point assigned. The point is well taken. It not appearing but that the plaintiffs may have a right of action at law for the recovery of compensation or damages, under the said last quoted paragraph of the Cleavenger-Davis deed, for the use and occupation of portions of the surface, the bill ought to have been dismissed without prejudice to any rights plaintiffs may have to sue at law for damages in the particular mentioned; or as otherwise incident to their rights pertaining to the properties involved in this suit.

The decree of the circuit court will be modified in that particular, and, as modified, affirmed.

*Modified and affirmed.*