QUARTO MINING CO., APPELLANT, *v.* LITMAN, APPELLEE.
QUARTO MINING CO., APPELLEE, *v.* LITMAN, APPELLANT.

[Cite as Quarto Mining Co. v. Litman (1975),
42 Ohio St. 2d 73.]

(Nos. 74-251 and 74-316—Decided April 16, 1975.)

74

*Messrs. Sherry & Yoss* and *Mr. Allan Sherry*, for Asher and Juanita Litman.

*Messrs. Thornburg & Furbee*, *Mr. Carter Thornburg*, *Messrs. Thomas & Thomas* and *Mr. Harold B. Thomas*, for Quarto Mining Company.

STERN, J. The dispute in these cases is between the owner of recoverable coal and of mining rights to the coal, and the owners of the surface land overlying that coal. Plaintiff seeks to obtain title or use of a strip of defendants' lands in order to construct a belt line to transport its coal, under the provisions of two 1906 deeds; defendants claim that the rights to use of the surface estates granted by those deeds are void.

The relevant provisions of the 1906 deeds are that plaintiff may take surface ground required for mining purposes, including ground for the purpose of transporting the coal of other lands, and that the plaintiff may require the conveyance of the surface ground taken at specified prices.[1]

---

[1]The deed in the Asher Litman tract granted ownership of a specified vein of coal, and contained the following provision:

"* * * Together with all the rights and privileges necessary and useful in the mining and removing of said coal, including the right of mining the same without leaving any support for the overlying strata, and without any liability for any injuries which may result to the surface from the breaking of said strata, the right of ventilation and drainage and of access to the mines for men and material; the shafts or openings for ventilation and drainage however, to be in the ravines and waste place upon said lands and not nearer than twenty rods of the principal buildings thereon. Any surface ground required for shafts or openings, or machinery, ways, roads, houses for employees, etc. may also be taken by the grantee, his heirs or assigns, but shall be paid for before being occupied at the rate of one hundred dollars per acre, which payment shall thereupon entitle the grantee, his heirs or assigns, to a deed in fee for the same. Also the exclusive rights of way for the purpose of mining, ventilating, draining and transporting the coal of other lands through the mines and openings in, upon, and over the said lands of the grantor. * * *"

The deed to the Juanita Litman tract contained the following provisions:

The trial court and the Court of Appeals found that the proposed use of the surface land was necessary and useful for plaintiff's mining operations, and that finding is not disputed by defendants. The essential issue, as it was presented to the trial court, was whether an option, without time limitation, to purchase surface ground necessary for the exercise of mining rights granted incident to the sale of the underlying coal was specifically enforceable, or was void by reason of the rule against perpetuities as a restraint against alienation. Our resolution of that issue makes it unnecessary to consider other issues raised in the Court of Appeals.

-I-

The fundamental purpose of the rule against perpetuities, as it developed in common law, was to prevent restraints on the alienation of property which might be perpetual or unreasonably long, while permitting restraints limited within the strict period of the rule, in recognition of a property owner's rights to the use and disposition of his property. The complexities of the common-law rule are familiar to every first-year law student, although full un-

---

"* * * Together with all necessary or convenient rights of way on the surface and under it for the purpose of approaching, mining, removing and transporting said coal, and, also the coal under other lands and to at pleasure, place, maintain, remove and replace on the surface or under it all fixtures, structures, and machinery and appliances deemed necessary or convenient to the operation of the mines and to do all things required to air and drain the working through the surface of said lands and to erect and maintain on the surface poles and wires for electrical power and also the power to mine and remove all of said coal with or without having support to the surface of said lands, with a waiver by the grantors of all damages whatever for any injury to the surface or to water courses or roads or ways by reason of the mining and removal of said coal and said grantees are also given the option to at pleasure buy and require a like conveyance of the surface exclusive. of buildings at the price of two hundred dollars per acre payable in cash when conveyed. * * *"

Athough it was not directly argued, the options to purchase contained in both deeds apparently are restricted to purchases incident to the exercise of the mining rights.

derstanding of its application and logic is no doubt a rare achievement.

A bare option exercisable outside the period of the rule is generally held to be void as an unreasonable restraint upon alienation. *London & South Western Ry. Co. v. Gomm* (1882), L. R., 20 Ch. D. 562; 3 Simes and Smith, The Law of Future Interests (2 Ed.), 156-163, Section 1244; Annotation, 162 A. L. R. 581.

As the courts have recognized, an option to purchase land can be a severe restraint on the free alienability of property. The fundamental defect of a perpetual option is that the right to alienate the property is divided into two roughly equivalent interests, and these interests may be so antagonistic as to effectively prevent the transfer of a fee simple estate. Where a definite option price is stated, an effective ceiling price is imposed on the property, above which no one may, with safety, purchase the property; the holder of the option in such case holds the effective power to alienate. Development and improvement of the property may thereby be severely retarded, for the existence of the option threatens the developer with loss of the profit from his efforts if the option is exercised. The possibility of fluctuation in land values and in the buying power of the dollar must further render imponderable the safety of any purchase of property encumbered by an option.

Because of this potential for the indefinite suspension of the "practical" power of alienation, and because the exercise of the option is so likely to depend upon changes in market value and level of development of the property over time, the courts have generally held such an option to be a non-vested contingent equitable interest in property, subject to the rule against perpetuities. As one commentator has said: "The law would be in a chaotic state with respect to this particular problem if current fluctuating market prices were to be the criteria for determining the validity of long-term options in gross. It must be conceded that the market price of land has ever-present potentialities for change. That being the case, it also follows that

the long-term land purchase option which expresses a fixed amount as to the price to be paid upon its being exercised may possibly bring about a restraint upon the practical power of alienating the optioned land. * * *'' Berg, II. Long-Term Options and the Rule Against Perpetuities, 37 Cal. L. Rev. 235, 267.

However, the same objections do not apply to all forms of options, and the courts have excepted certain types of options not considered to fall within the rule. Thus, courts have generally held that an option to purchase land is valid as a part of a long-term lease of that land. *Keogh* v. *Peck* (1925), 316 Ill. 318, 147 N. E. 266; *Hollander* v. *Central Metal & Supply Co.* (1908), 109 Md. 131, 71 A. 442. Annotation, 162 A. L. R. 581, 599.

The Restatement similarly holds such option to be outside the rule. 4 Restatement of the Law, Property, 2326, Section 395. The reason for excepting options contained in leases, aside from the complexities of the common-law rule, is that the practical benefits of enabling the actual user of the property to acquire full title justifies such an exception, especially in commercial leases. 4 Restatement of the Law, Property, *supra,* Comment a. Further, the actual interest of a long-term lessee in the property which he leases is one of substantial value and is of itself a significant restraint upon alienability, so that the addition of an option term to the provisions of a lease does not greatly affect alienability, where the option is limited to the lease term. Certainly an option term in a lease does not restrain alienability in any greater degree than covenants for renewal of the lease, to which the rule does not apply. See *Hollander* v. *Central Metal & Supply Co., supra* (109 Md. 131). Realistically, in long-term commercial leases, the granting to the lessee of an option to purchase is more likely to act as an aid, rather than a hindrance, to alienability, since the long term occupant of the property is thereby able to convey both the lease and the fee estate, and thus is more likely to encourage development and improvement of the property.

A similar problem is posed by options for the purchase of a part of an overlying surface estate, granted as a part of a mineral estate. The courts have uniformly considered such options to be vested in possession as a part of the mineral estate where the option does not in fact act as a restraint upon alienation.

In *Buck* v. *Walker* (1911), 115 Minn. 239, 132 N. W. 205, the property owner sold the surface estate, but reserved mining rights and the ownership of any minerals. The deed provided that, if mining activities injured or destroyed the land or any buildings or improvements thereon, the owner of the mining rights should pay to the property owner "all reasonable and proper damages occasioned by such mining operations; or, at the option of the * * * [owners of the mining rights], they may demand a conveyance to themselves of such portion of said lands as they may designate in writing from time to time, and at a price not exceeding thirty dollars per acre of the lands so designated * * *." The court held that this provision was not void for uncertainty or because it created a perpetuity, because the option was " * * *simply an incident to the exercise by the grantor of his right to explore and remove the minerals, an alternative provision, at the election of the grantor, in place of the agreement to pay the actual damages. It begins and ends with the exercise by the grantor of his right to explore for and remove the minerals." (115 Minn., at 246.) The court considered the option right to be an incident to the mineral estate alienable as a part of that estate, and therefore held the option to be valid under the Minnesota rule against perpetuities, which provided that no interest in land be inalienable beyond the limitation of two lives in being at the creation of the estate.

In *Threlkeld* v. *Inglett* (1919), 289 Ill. 90, 124 N. E. 368, the Supreme Court of Illinois upheld an option in a deed which provided for the taking of such portion of the surface land as necessary for the purpose of the mining rights conveyed, to be paid for at $150 per acre plus the full cash value of any permanent improvements. The court

held that this option was only a means to attain the fruits and effects of the mining rights to the property, and as such was not subject to the rule against perpetuities. As the court, at page 97, stated: " * * * the deed, when made, would not only pass the coal, oil and gas, with the right to mine and remove the same, but also the right to enter upon and use so much of the surface of the land as might be necessary to the enjoyment of the property and rights conveyed, and the agreement was merely that the land taken for such use should be paid for, when located, at the rate of $150 an acre. It was not within the rule against perpetuities." See, also, *Chicago, Wilmington & Franklin Coal Co.* v. *Ford* (C. A. 7, 1943), 133 F. 2d 610.

The rationale of those cases is that the use of the surface estate is a necessary incident to the use and enjoyment of an underlying mineral estate, as the courts have long recognized, and that the taking of a part of the surface estate necessary for mining, by means of an option, is a reasonable incident to the mineral estate. Indeed, the requirement that necessary property taken for mining be conveyed and paid for may protect the property owner from uncompensated use of his property. Since mining rights include necessary uses of the surface such as the sinking of shafts, rights of way above and below the surface, use of the land for the housing of miners, and other uses, an option which requires payment for actual use of the surface does not render the surface estate to any greater degree inalienable, where the option is limited to the exercise of those mining rights. The option, in fact, prevents an uncompensated taking for use under an easement.

Other courts have held options in mineral deeds to be void, but in each of these cases the option was exercisable either for purposes other than mining, or for a use which was not necessary for mining.

In *Barton* v. *Thaw* (1914), 246 Pa. 348, 92 A. 312, the Supreme Court of Pennsylvania held that an option to purchase land for $100 per acre, unlimited in time, was void under the rule against perpetuities. Although the op-

tion was contained in a deed which conveyed the coal and other underlying minerals, the court considered the option to be exercisable independently of the mining rights. As the court, at page 358, stated:

" * * * The event upon which the estate is to arise, to-wit, the acceptance of the option to purchase, is uncertain, being unconfined as to limit of time. The interest created by this option therefore is not vested, but contingent, and is within the rule against perpetuities. *In that respect this case differs from one where the owner of land conveys the coal thereunder, with general mining rights and the right to use surface for mining purposes, as in Dewey v. Great Lakes Coal Company, 236 Pa. 498, * * *. In a case like that the rights are conveyed by deed and vest immediately. There a present fixed right of future enjoyment is conveyed, although the right of enjoyment may not be exercised immediately.*" (Emphasis added.)

In *Rocky Mountain Fuel Co.* v. *Heflin* (1961), 148 Colo. 415, 366 P. 2d 577, an action to quiet title, the deed had been conveyed subject to the reservation of mineral rights, and contained an option to repurchase any part of the surface necessary to carry on mining operations, and up to 30 acres "for housing facilities, in carrying on mining operations," for $25 per acre. The Supreme Court of Colorado relied upon *Barton* v. *Thaw, supra,* in holding that the option was void under the common-law rule against perpetuities, stating, at page 422, that:

" * * * the right to repurchase any 30 acres in the reservation is a right to reacquire the complete estate or fee in all the acreage which the Fuel Company might at some undetermined time in the future elect to take. Such a taking goes far beyond any interest in the minerals and amounts to a naked option in so far as it exceeds the interest which might be connected with the mineral estate. The reservation to repurchase, therefore, violates the common law against perpetuities."

The judgment in that case leaves undecided the question of whether a more limited option would be held valid,

but the language of the court indicates that if such an option were limited to the necessary and reasonable use of the mineral estate, it would be considered a vested part of the rights making up the mineral estate, and would be valid.

*Middleton* v. *Western Coal and Mining Co.* (D. C. W. D. Ark. 1965), 241 F Supp. 407, was also a suit to quiet title. A 1904 deed had conveyed the coal and other minerals to defendant, along with mineral rights. The deed provided that the defendant could at any time elect to take the surface for an amount to be agreed upon by the parties, or in default of an agreement, by binding arbitration. The option was independent of the mining rights granted by the deed, and was exercisable at the discretion of the grantee and its successors or assigns. The court relied on *Barton* v. *Thaw, supra,* in holding that the option was in effect a grant of a contingent interest in the surface in fee, unlimited in time and thus void under the common-law rule against perpetuities. Since the option in that case was exercisable solely at the discretion of the grantee, for purposes not limited to the mining rights granted in the deed, the court's decision was clearly correct under the general rule that such options are invalid as restraints upon alienation.

The decisions of the West Virginia courts are not completely clear on this issue, but do appear to follow the general rule that an option is valid where limited to surface property necessary for the use of the mineral estate. In *Post* v. *Bailey* (1931), 110 W. Va. 504, 159 S. E. 524, an option which permitted the owner of underlying coal to purchase areas of the surface at $40 per acre to be used for coal mining facilities was held to be valid. The court held the option to be a vested right to the use of the surface, because the right to use parts of the surface sufficient for mining had been acquired appurtenant to the purchase of the underlying coal. The effect of the option, the court stated, at page 510, ''was therefore merely to fix a price of $40 per acre to be paid for the use of so much of the surface as might be employed by the grantee and his assigns under the provisions of the deed.''

However, in *West Virginia-Pittsburgh Coal Co.* v. *Strong* (1947), 129 W. Va. 832, 42 S. E. 2d 46, the Supreme Court of Appeals held an option provision void. The court, at page 842, characterized the opinion in the *Post* case as concerning "the distinction between a covenant granting mining rights together with the right to the use of the surface to be paid for at an agreed price and the right to acquire the title to the land itself * * *." That distinction is not strictly correct, since the option of the *Post* case was for the purchase of title to the surface, and not merely payment for use. However, the option provision struck down by the court was apparently not limited to purchase of surface land necessary for mining, but permitted purchase of all land overlying the vein of coal, and the plaintiff was seeking to exercise the option in order to strip mine, which the court found exceeded the mining rights granted by the deed

A single principle is expressed in all of the above cases: A bare option to purchase land which is unlimited as to time is void as an impermissible restraint upon alienation, but an option which is appurtenant to a mineral estate and is limited to the necessary and reasonable use of the overlying surface estate for the exercise of mining rights is a presently vested part of the mineral estate, and is not void as a restraint upon alienation.

This principle is consistent both with the legal relationship between a surface estate and an underlying mineral estate, and with the realities of mining practice. The mining of a deposit inevitably requires some use of the surface for the sinking of shafts, rights of way for removal of the minerals, and other such uses dependent upon the type of mining operation. Unless the language of the conveyance by which the minerals are acquired repels such construction, a severed mineral estate is considered to include those rights to use of the surface as are reasonably necessary for the proper working of the mine and the obtaining of the minerals. 37 Ohio Jurisprudence 2d 19, Mines and Minerals, Section 14; *Harper* v. *Jones* (1946), 49 Ohio Law Abs. 289, 74 N. E. 2d 397. Similarly, the owner of the

land has the right to subjacent support, and any conveyance or waiver of this right must clearly appear in the instrument conveying the estate. *Ohio Collieries Co.* v. *Cocke* (1923), 107 Ohio St. 238, 140 N. E. 356. The owner has the right to enjoy the land free from annoyance, except such as reasonably arises from the need to exercise the mining rights of the mineral estate. *Harper* v. *Jones, supra,* at 294.

In our recent decision, *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, the issue was also that of the relationship between a surface estate and the underlying mineral estate. The mining rights granted in the deed conveying the mineral estate were similar to those in the instant case, and included an option, " * * * that for any and all surface used by the grantee, its successors and assigns, it or they shall pay at the rate of fifty dollars per acre." This court held that the option did not give an unqualified right to use the surface, and specifically did not give grantee the right to strip mine. As we said, at page 248: " * * * [W]e cannot ignore the additional fact that strip mining, although similar to deep mining insofar as both represent a means to a legitimate end, necessarily and unavoidably causes total disruption of the surface estate. Time-honored rules of law, meant to insure the mutual enjoyment of severed mineral and surface estates, cannot be blindly applied to resolve a question involving the right to strip mine. * * * "

We also noted the legal principle, cited in 54 American Jurisprudence 2d 389, Mines and Minerals, Section 210, that, "* * * unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use as much of the surface as may be reasonably necessary to reach and remove the minerals," and commented:

"This implied right of the mineral owner is best explained as a practical attempt to insure that both he, and the surface owner, can enjoy their respective estates. To construe the 'right to use' as including the right to strip mine would be to pervert the basic purpose of a principle

designed to *mutually* accommodate the owner of the mineral estate and the owner of the surface estate in the enjoyment of their separate properties. * * * ''

The holding in *Skivoloki* recognized that strip mining causes the total disruption of the surface estate, and is therefore in fundamental conflict with the general rule that owners of the respective estates are entitled to the enjoyment and reasonable use of those estates. As we said, at page 251, ''because strip mining is totally incompatible with the enjoyment of a surface estate, a heavy burden rests upon the party seeking to demonstrate that such right exists.''

In the instant cases, the taking is limited to necessary use of the surface estate for deep mining, and the use is for a mining right specifically included in the deed, namely, the right to use of the surface to transport coal from other lands. In *Skivolocki*, we specifically recognized the validity of surface rights granted incident to a mineral estate, and the same principles require recognition of the mining rights granted by the deeds in these cases. The options in these deeds provide only that the use of the surface necessary for the exercise of granted mining rights may be effected by payment and conveyance of necessary parts of the surface. This is a reasonable commercial arrangement, particularly in view of the length of time needed to explore and acquire contiguous blocks of territory for operation of a deep coal mine, an operation which may continue for several decades. It is an arrangement which does not in any way create an option exercisable beyond the mining rights granted by deed, and imposes no greater restraints upon the property than would an easement. See *Moore* v. *Indian Camp Coal Co.* (1907), 75 Ohio St. 493, 80 N. E. 6.[2]

We therefore reverse the judgments of the Court of Appeals which held these options to be void.

---

[2]Because the options in the instant cases do not act as a restraint against alienation, and do not fall within the scope of the common-law rule against perpetuities, we need not decide the extent to which the common-law rule was in effect in 1906, the date of the original conveyances herein.

-II-

Defendants raise three other defenses to specific performance of the mining-right clauses in their deeds.

Defendants first claim that the conveyance is too uncertain in its description of the land to be conveyed, relying upon *Kling* v. *Bordner* (1901), 65 Ohio St. 86. However, the provision herein clearly complies with the requirement in *Bordner*, for "it contains the essential terms of the agreement expressed with such clearness and certainty that they may be understood from the memorandum itself * * *." Defendants' reliance upon *Schmidt* v. *Weston* (1948), 150 Ohio St. 293, is also misplaced. No claim is made as to any discrepancies or deficiencies in the descriptions contained in the defendants' deeds, and in *Schmidt* v. *Weston, supra,* at 299, the court stated that "if the agreement upon which the action is brought or some memorandum or note thereof in writing signed by the party to be charged therewith identifies the parties and their respective obligations and the land in question, courts will apply such terms and descriptions even though parol evidence or evidence aliunde is necessary for the full understanding of the terms and descriptions set forth * * *."

The right of way granted for use of the surface to transport coal from other property is also not extinguished by the Marketable Title Act (R. C. 5301.47 *et seq*). R. C. 5301.53 (E) specifically states that the Marketable Title Act does not apply "to bar or extinguish any right, title, estate or interest in and to minerals, and any mining or other rights appurtenant thereto or exercisable in connection therewith." Defendants argue that the use of the belt-line to transport coal mined primarily from other lands is not "appurtenant." However that may be, the proposed use is clearly "exercisable in connection" with the mineral estate, for the belt line may be used to transport coal from that estate as well as coal from other property.

The right to use of the surface estate is also not barred by R. C. 2305.06. A cause of action for conveyance of the property did not accrue until the surface was needed for the exercise of grantee's mineral rights.

## -III-

The present actions are for specific performance, seeking the conveyance of real property. Specific performance of a contract is a distinctively equitable remedy. *Commrs. of Muskingum County* v. *State* (1908), 78 Ohio St. 287, 305, 85 N. E. 562.

As this court said in *Spengler* v. *Sonnenberg* (1913), 88 Ohio St. 192, 203: "* * * Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case."

Although we find the option provisions in the Litman deeds to be valid. the circumstances of the instant cases make proper the exercise of the principles of equity.

The provisions in the Litman deeds required payments of $100 and $200 per acre for any land conveyed to the grantee. These provisions date from 1906, and the changes in the purchasing power of the dollar, the likelihood of changes in the level of development and value of the property, and the simple fact that almost 70 years have passed since these deeds were written are all factors indicating that the 1906 prices cannot be conclusive. Although those prices might have expressed the intent of the parties at that time, and for a reasonable time thereafter, it is most unlikely that such prices are at present equitable, in light of widespread economic changes. "Depreciation of the currency or other medium of payment contracted for has frequently been held to justify the court in withholding specific performance, or at least conditioning it upon payment of the actual value of the property contracted for. * * *" 71 American Jurisprudence 2d 120, Specific Performance, Section 88.

In the instant cases, unless the parties agree on a price for the property to be conveyed, the trial court should condition the granting of specific performance upon the payment of the actual value of the property sought by plaintiff.

*Judgments reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.