## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**CDS Family Trust, LLC, a Delaware**
**Limited Liability Company,**
**Plaintiff Below, Petitioner**

**FILED**

**January 15, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs) No. 13-0376** (Grant County 11-C-46)

**ICG, Inc., Vindex Energy Corp., a**
**West Virginia Corporation, and**
**CSX Transportation, Inc.**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner CDS Family Trust, LLC ("CDS"), by counsel Timothy M. Miller and Benjamin W. Price, appeals from the March 11, 2013 order of the Circuit Court of Grant County that granted Respondent CSX Transportation, Inc.'s ("CSX") motion for summary judgment and Respondents ICG, Inc., and Vindex Energy Corporation's ("Vindex") motions for partial summary judgment. Respondent CSX appears by Andrew S. Zettle. Respondents ICG, Inc., and Vindex appear by John Philip Melick, Christina T. Brumley, and James Matthew Davis.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

CDS is a Delaware limited liability company that owns certain real estate in Grant County, West Virginia. Vindex is a West Virginia Corporation that operated a coal load out facility in Grant County that sits on real estate adjoining property owned by CDS. ICG, Inc. is the parent company of Vindex. CSX is a Virginia corporation that transported coal by rail on behalf of Vindex across property owned by CDS.

The primary issue before the Court is the dispute between CDS and CSX over the right of CSX to use a railroad track across property owned by CDS. We find that issue is resolved by an agreement between the parties' predecessors that expressly creates an easement for CSX's railroad operations over the subject property. The circuit court relied upon the uncontroverted language of the agreement to award summary judgment in favor of CSX. We agree that the agreement creates an easement over the property. The secondary issue we address is whether Vindex has standing to counterclaim for declaratory and injunctive relief against CDS to request the circuit court to order a supplemental deed to the property in question. We find that Vindex

1

does have standing to pursue this counterclaim because it is seeking to enforce its predecessor in interest's rights. We therefore affirm the decision of the circuit court.

**Factual and Procedural History**

While owned by brothers Carl, Carmen, and Warren DelSignore, Buffalo Coal Company (Buffalo) entered into a mine track agreement (Agreement) with the Baltimore and Ohio Railroad Company (B & O) dated September 3, 1984, contemplating construction of a railroad track onto property owned by Buffalo for the use of a load-out facility, and granting B & O the right to use and control that track free of charge. CDS and Vindex are both successors in interest of Buffalo. CSX is successor in interest of B & O. The Agreement states, in part:

> The term "mine track", as used herein, shall mean all of that track having a length of approximately nine thousand twelve and eight-tenths feet (9,012.8'), . . . and shall include supporting structures and appurtenances used in connection with said track.

> Said mine track is owned and shall be maintained by the Railroad, and Railroad shall have the absolute right to control the use of the same and to use, for Railroad purposes and without cost to it, the whole or any part of said mine track whenever, in the sole judgment of Railroad such use does not materially affect the use of said mine track by Operator. . . .

> Operator will promptly remove [earth, rock, coal, slate, or any other material], and shall be liable for any damages caused by the presence of such materials on the track or land of Railroad.

> Railroad may, at its own expense, extend, rearrange, alter, relocate, or reconstruct mine track or change the elevation thereof, and this agreement shall apply to any and all extensions or additions or relocations of, the aforesaid mine track . . .

> Operator shall keep said mine track clear of obstructions and shall not place or permit to be placed, or to remain, any structure, equipment, material, object, excavation, or obstruction of any kind, either temporary or permanent, within the clear space . . .

> Except as herein otherwise provided, the term of this agreement shall be for one month from the date hereof, and thereafter, from month to month upon the same terms until terminated, it being understood and agreed that either party shall have the right to terminate the same at the end of the original term or at any time thereafter by giving to the other party not less than thirty (30) days' notice in writing, but such termination shall not affect nor impair any liability or obligations incurred hereunder prior to such termination, nor shall such termination affect or impair Railroad's ownership and control of said mine track.

2

This agreement shall be binding upon the successors and assigns of the parties hereto respectively.

A plat of the line extension was attached to the Agreement illustrating the rail line extension from the current track.

As we noted above, CDS and Vindex are both successors in interest of Buffalo through a complex series of transactions and a bankruptcy order involving Buffalo's assets.[1] CSX is successor in interest of B & O.

On July 18, 2011, CDS sued ICG, Inc., Vindex, and CSX, alleging that they had been operating on the property of CDS without lawful right. Vindex answered and counterclaimed for declaratory and injunctive relief against CDS, and requested the circuit court to order CDS or a special commissioner to execute the supplemental deed as covenanted in the 2001 deed between CDS and Buffalo. Vindex argued that it acquired the right to enforce the covenant from Buffalo

---

[1]Carl survived Carmen and Warren DelSignore, and thus became the owner of Buffalo. In his will, Carl created CDS. The trustees of CDS negotiated the sale of Buffalo with the late Charles R. Howdershelt and Gerald W. Ramsburg, and their C & G Energy Group, Inc. The acquisition was effected through several written agreements, including a February 28, 2001, Stock Purchase Agreement in which the trustees of CDS, as the sellers of Buffalo, expressly represented to C & G that the 1984 Agreement was a Buffalo asset, that Buffalo was in compliance with and enjoyed quiet possession of the mine track agreement and that the agreement was in full force and effect. CDS also acquired from Buffalo over 1,000 acres in Grant and Tucker Counties, from which Buffalo accepted the property on which Buffalo would continue operations, including use of the load out. CDS and Buffalo each thought – incorrectly – that the section of railroad track required for unit trains to access the load out was captured in the description of the property excepted from the Buffalo deed to CDS.

Buffalo and CDS covenanted to "jointly commission a survey of the excepted tracts and thereafter join in the execution and recording of a supplemental deed particularly describing that property." Throughout the period of C & G's ownership, Buffalo claimed in good faith all of the property, loaded unit trains, including for Vindex, and used the railroad facilities from 2002 to 2006. From the time that C & G acquired Buffalo in January 2001 until January 2007, the new owners believed that Buffalo owned all of the relevant property and enjoyed all of the rights in the 1984 Agreement. CDS questioned none of this use, so Buffalo never required CDS to jointly commission a survey to support the supplemental deed.

Buffalo filed a Chapter 11 bankruptcy petition on May 5, 2006. CDS participated in Buffalo's bankruptcy proceedings, and approved the January 30, 2007, conveyance from Buffalo to Vindex of the property excepted by Buffalo from its 2001 deed to CDS. Under § 2.1 of the agreement, which was filed with and approved by the bankruptcy court after notice to all interested parties, Buffalo conveyed to Vindex all of its right, title, and interest in "[a]ll real property and interests in real property owned by Buffalo Coal Company located in Grant and Tucker Counties, West Virginia," and the "[r]ights reserved by Buffalo in the 2001 [d]eed." The transfer was consummated on January 19, 2007, with a deed and separate assignment to all of Buffalo's right, title, and interest in the 1984 Agreement.

in 2007, following the bankruptcy proceedings.

The circuit court succinctly summarized the substance of the dispute between CDS, Vindex and ICG, Inc.:

> 41. At the outset of the analysis, it is important to note the degree of trespass CDS Family Trust alleges. In its letter to ICG, Inc. regarding the disputed tracks, CDS Family Trust stated that "[a]ssuming that the railroad tracks siding runs NE to SW to the load out facility, then continuing maybe 15 train cars further SW, the Vindex property line ends and thereafter the cars go onto Trust Property." *Dunn Letter,* p. 2, ¶ 1 (January 31, 2009). Accordingly, it would appear that CDS Family Trust claims that "old" Buffalo Coal Company reserved unto itself the entirety of the railroad track including that which serviced the load out facility, but failed to reserve the remainder of the track and siding which would have allowed it to efficiently utilize the load out facility and load the rail cars with coal. A curious action since the remaining mine track and siding terminates almost immediately on the property CDS Family Trust claims was deeded to it by "old" Buffalo Coal Company.

The circuit court recognized that the resolution of the disputes between CDS and CSX involved an interpretation of the terms of the 1984 Agreement between B & O and Buffalo:

> [CSX] request[s] that this Court grant summary judgment on the basis that CSX has a valid easement over the property in question irrespective of the dispute between CDS Family Trust and Vindex as to its ownership and inasmuch as CSX has control over its shipping lines, then ICG and Vindex are both entitled to use same at [CSX's] discretion.

CSX moved for summary judgment on the basis of the 1984 Agreement. Vindex, as shipper of CSX, joined in CSX's motion. CDS moved for summary judgment, arguing, as to Vindex, (1) that Vindex is not a successor in interest to Buffalo; (2) that Vindex lacks a deed or will conveying interest to the property as required by West Virginia Code § 36-1-1; (3) that Vindex is a stranger to the 2001 deed; and (4) that Vindex was not a bona fide purchaser.

The circuit court denied CDS's motion, finding that CSX has a valid easement, and that Vindex as a CSX shipper has the right to the mine track. The circuit court treated Count 1 of Vindex's counterclaim as an action to quiet title "to the properties owned by Vindex," noting that Vindex had submitted a plat showing the properties it acquired from Buffalo in 2007, and ordered CDS to file its own survey if it opposed Vindex's, at which point the dispute would be resolved.

Thus, the only questions remaining before the circuit court were: (1) the precise description of the property;[2] and (2) Count 2 of Vindex's counterclaim, which concerns CDS's

---

[2]The circuit court treated Vindex's request for declaratory judgment as a motion to quiet title, and held:

use of a haul road that has no relationship to the matters raised by CDS in this appeal.

CDS appeals from the March 11, 2013, order[3] of the circuit court which granted CSX's motion for summary judgment and the motions of Vindex and ICG for partial summary judgment. The dispositive ruling, with respect to CDS's claims against CSX, is that "CSX has a valid easement agreement over the entirety of the mine track." The circuit court also denied CDS's motion for summary judgment on its counterclaim against Vindex.

## Standard of Review

We begin our analysis by acknowledging this Court's standard of review. We previously held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Further, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

## Discussion

On appeal, CDS raises five assignments of error relating to its trespass claims: (1) that the circuit court erred in holding that the Agreement grants to CSX a permanent and irrevocable easement across the real property owned by CDS; (2) that the circuit court erred in relying upon Article XI, Section 9 of the Constitution of West Virginia[4] to conclude that the mine track

---

To resolve the boundary line issue, the Court will treat the request for Declaratory Judgment as one to quiet title to the properties owned by Vindex. Inasmuch as Vindex already completed its survey, the Court will allow 30 days for the CDS Family Trust to commission a survey of their properties in the disputed boundary areas. Should CDS Family Trust decline to commission a survey of the area or fail to do so in a timely fashion, this Court will appoint a special commissioner to issue the deed requested by Vindex.

The boundary line dispute remains pending and is not the subject of this appeal.

[3]The circuit court entered a combined order applicable to this case and a separate action between CDS, ICG, Inc., and Vindex involving a coal lease agreement (Civil Action No. 12-C-8) that is subject of a separate appeal before this Court No. 13-0375.

[4]West Virginia Constitution Article XI, Section 9 provides that railroads in West Virginia "are hereby declared public highways and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as shall be prescribed by law[.]" In

agreement created a public highway across the private property owned by CDS; (3) that the circuit court erred in holding that CSX and Vindex may cross over and through the private property owned by CDS in order to access a private coal load out facility located on property owned by Vindex; (4) that the circuit court erred by ruling that the Agreement cannot be terminated by CDS despite the express termination clause; and (5) that the circuit court erred in determining that the Agreement conveyed an interest in the land or an easement through the private property owned by CDS.

After careful review of this matter, we find that all of the issues raised by CDS pertaining to its trespass claims can be resolved by determining whether the Agreement created an easement over the property.[5] For the following reasons, we find that Agreement created an easement to

---

Syllabus Point 5 of *A & M Properties v. Norfolk Southern Corporation,* 203 W.Va. 189, 506 S.E.2d 632 (1998), this Court held that, under West Virginia Constitution Article XI, Section 9, no interest in a railroad trackway can be established by way of adverse possession, prescriptive easement or equitable estoppel, so long as the trackway continues to be used for railroad purposes.

[5]*Black's Law Dictionary* (8th ed. 2004) defines an "easement" as:

An interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road). The land benefitting from an easement is called the dominant estate; the land burdened by an easement is called the servient estate. Unlike a lease or license, an easement may last forever, but it does not give the holder the right to possess, take from, improve, or sell the land. The primary recognized easements are (1) a right-of-way, (2) a right of entry for any purpose relating to the dominant estate, (3) a right to the support of land and buildings, (4) a right of light and air, (5) a right to water, (6) a right to do some act that would otherwise amount to a nuisance, and (7) a right to place or keep something on the servient estate.

We gave a similar definition of the term in *Town of Paden City v. Felton,* 136 W.Va. 127, 136, 66 S.E.2d 280, 286 (1951), where we stated (with citations omitted):

An easement in real estate is an interest in land and for every such easement there must be two distinct estates or tenements, the dominant to which the right belongs, and the servient upon which the obligation rests. It is an incorporeal hereditament and may be created in various ways. The general rule, subject to several exceptions, is that an easement can be created only by grant, express or implied, or by prescription, which presupposes a grant. *An easement may, however, be created by agreement or covenant as well as by grant.* Many authorities say that, as an exception to the general rule just stated, an easement may sometimes be created by estoppel. One eminent authority states that an easement may be created or acquired by six different methods: express grant,

6

"control and use" the mine track for railway purposes. CSX is the successor of B & O, and possesses the rights granted by Buffalo to the B & O in the Agreement. Therefore, CSX is operating lawfully under the Agreement and CDS's trespass claims fail.

Unlike certain railroad sidetrack agreements that grant limited right to the railroad to conduct operations to serve a specific customer for a limited duration of time, the Agreement in the instant case granted the railroad a permanent right to conduct railroad operations that would serve any of the railroad's future customers. The Agreement explicitly states that the "mine track is owned" by the railroad; and the Agreement provided that the railroad shall have "the absolute right to control the use of the same and to use, for Railroad purposes and without cost to it, the whole or any part of said mine track whenever, in the sole judgment of Railroad such use does not materially affect the use of said mine track by operator." The Agreement further provided that the "Railroad may, at its own expense, extend, rearrange, alter, relocate, or reconstruct mine tack or change the elevation thereof." The railroad was thus granted the right, at the railroad's expense, to modify the mine track in such a manner as the railroad may deem appropriate to eliminate any interference that its railroad operations may cause to the operator's operations, and to allow the track to be devoted by the railroad for any future railway purposes, "without cost to it."

The Agreement made clear that the railroad's ownership and right to use the track for railroad purposes were not dependent upon a continuing customer relationship with Buffalo, or its successors or assigns, by specifically providing that termination of the Agreement shall not "affect or impair Railroad's ownership and control of said mine track." The railroad thus obtained a permanent right to control the use of the mine tracks that extended its railway line, and to use the railway tracks for any railroad purposes, without incurring any costs for such use.

Therefore, we find that the Agreement created an easement to control and use the mine track for railway purposes. In Syllabus Point 1 of *Post v. Bailey*, 110 W.Va. 504, 159 S.E. 524 (1931) we recognized that "[a]n easement may be created by covenant or agreement as well as by grant."[6]

Furthermore, the Agreement specifically provides that it "shall be binding upon the successors and assigns of the parties hereto respectively," and further provides that the termination of the Agreement shall not "affect or impair Railroad's ownership and control of said

---

reservation or exception in a deed, implied grant, prescription, a statutory proceeding usually under the power of eminent domain, and estoppel.

(Emphasis supplied). *See Newman v. Michel,* 224 W.Va. 735, 740-41 n.3, 688 S.E.2d 610, 615-16 n.3 (2009).

[6]CDS contends that the easement must fail because the Agreement is not a "deed" or "will" and thus cannot convey an interest in real property consistent with West Virginia Code § 36-1-1. We find this argument unpersuasive because in West Virginia Code § 36-3-5a, the Legislature specifically recognized that easements may be created by instruments other than deeds.

mine track." The Agreement expressly differentiated between the contract for rail service that could be terminated upon thirty-day written notice, and the continuing easement of the railroad to use and control the mine track that would survive the termination of the service obligations.

The remaining assignment of error raised by CDS is that the circuit court erred in failing to recognize that Vindex lacked standing to assert a counterclaim against CDS to require the issuance of a supplemental deed. We find this assignment of error lacks merit. To resolve this boundary line dispute, the circuit court treated the request for declaratory judgment as one to quiet title to the properties owned by Vindex. An action to quiet title is "now a universal procedure to determine disputed titles to land[.]" *Marthens v. B & O Railroad Co.,* 170 W.Va. 33, 38 n.2, 289 S.E.2d 706, 712 n.2 (1982). Furthermore, Vindex is seeking to enforce its predecessor in interest's rights by requiring a supplemental deed, and it acquired that right through § 2.1 of its 2007 asset purchase agreement with Buffalo.

### Conclusion

In view of the foregoing, we find that summary judgment was appropriate in this case. We also find that Vindex has standing to file an action to quiet title to its property. We therefore affirm the March 11, 2013 order of the Circuit Court of Grant County.

Affirmed.

**ISSUED:** January 10, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Brent D. Benjamin

8