(No. 12704.—Decree affirmed.)

GEORGE W. THRELKELD *et al.* Appellants, *vs.* A. J. INGLETT *et al.* Appellees.

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. SPECIFIC PERFORMANCE—*options for purchase of coal rights may be enforced.* Taking options for the purchase of coal, oil and gas underlying certain land is a legitimate business transaction, and the fact that the holders of the options do not intend to accept them unless the minerals are found and can be disposed of with profit does not affect their rights.

2. SAME—*option contract without consideration is only a continuing offer.* Although an option contract for the purchase of coal rights in land recites a consideration of one dollar, if no consideration is in fact paid the option amounts only to a continuing offer of sale during the time of the option and may be withdrawn, upon notice, at any time before acceptance.

3. SAME—*when sale to another party does not amount to notice of withdrawal of option.* Where the owner of land gives to certain parties an eighteen months' option to purchase the coal, oil and gas underlying the land, knowing that the parties must interest some coal company in the proposition before they will accept the option, such parties are entitled to notice of a withdrawal of the option before the eighteen months have expired though they paid no consideration, and a mere sale by the owner to another party does not take the place of such notice.

4. SAME—*when option for purchase of coal rights is not within rule against perpetuities.* A provision in an eighteen months' option for the purchase of the coal, oil and gas underlying certain

land, that the deed, when made, shall make provision for taking such portion of the surface of the land as is necessary for the purpose of the mining rights conveyed and fixing the price per acre for the land so taken, is not in violation of the rule against perpetuities, as authorizing the purchase of real estate at any time in the future.

5. SAME—*contract must be certain in all its provisions before the court will decree specific performance.* To entitle a party to specific performance of a contract it must be so certain in all its parts that the court can require performance of the specific thing contracted to be done, and if an option contract for the purchase of the coal, oil and gas underlying certain land is uncertain as to what provisions shall be inserted in the conveyance and such uncertainty is not removed by proof or waiver, the court cannot specifically enforce the contract.

6. DEEDS—*what is included in a conveyance.* Where a grant is made for a valuable consideration it is presumed that the grantor intended to convey and the grantee expected to receive the full benefit of it, and the grantor conveys not only the thing specifically described, but all other things, so far as it is within his power to pass them, which are necessary to the enjoyment of the thing granted.

7. SAME—*conveyance of coal, oil and gas carries right to use necessary parts of surface.* A conveyance of coal, oil and gas, with the right to mine and remove the same, carries with it the right to enter upon and use so much of the surface of the land as may be necessary to the enjoyment of the property and rights conveyed.

APPEAL from the Circuit Court of Jefferson county; the Hon. CHARLES H. MILLER, Judge, presiding.

NOLEMAN & SMITH, for appellants.

G. GALE GILBERT, ROBERT M. FARTHING, WALTER W. WILLIAMS, THURLOW G. LEWIS, GEORGE C. COFFEY, and W. H. HART, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In the summer and fall of the year 1917 the appellants, George W. Threlkeld, William H. Green, L. C. Morgan and Jerome Mannen, procured from various owners options for

the purchase of the coal, oil and gas underlying several thousand acres of land in the townships of Elk Prairie and Bald Hill, in Jefferson county. Their plan and effort were to secure options upon a connected body of land sufficient to justify some large coal corporation in taking over the property and mining rights if it was demonstrated by drilling there was coal of sufficient thickness and conditions for profitable mining. Among other options they took one on September 29, 1917, from the appellee A. J. Inglett, in which a consideration of one dollar was expressed, and by which he agreed, for the further consideration of $25 per acre, to convey to appellants, their heirs or assigns, by warranty deed, including the release and waiver of dower and homestead rights, on or before eighteen months thereafter, the coal, oil and gas underlying his land, containing 320 acres, more or less, and to furnish appellants an abstract of title showing a good, clear and merchantable title, which the appellants were to have a reasonable time to examine after the exercise of the option. About twenty test drillings were made in the field covered by the options, which showed that the lands were underlaid with a vein of coal of suitable thickness and conditions for mining. The appellee the West Frankfort Coal Company invaded the field in which the appellants had operated and secured options from different owners of lands, telling them that the options given to the appellants were not worth anything and not valid and promising to protect the owners against any claim of the appellants. On June 4, 1918, the appellees other than Inglett induced Inglett to make a deed to the West Frankfort Coal Company for the coal, oil and gas underlying his land, and the deed was deposited in the bank, to remain there until the matters were settled. There is no evidence that they made any statement to Inglett about the previous option, but they had full knowledge of it, and when an attempt was made to enforce it they agreed to, and did, defend the cause for Inglett. The appellants had made an ar-

rangement with the representative of large coal companies for taking the property and mining rights to be conveyed by the options they had secured, and on August 5, 1918, they served a written notice on Inglett accepting the option and notified him to deliver his warranty deed to the Jefferson State Bank of Mt. Vernon, together with an abstract of title. He acknowledged in writing the receipt of the notice, with a statement that he would deliver abstracts of title and deeds to the Jefferson bank at once. About a week after August 7, 1918, he served a written notice bearing that date on the appellants, stating that he had theretofore sold to the West Frankfort Coal Company the coal, oil, gas and other minerals underlying the surface of the land, and that the option given to the appellants had been determined and ended by him and was then void and of no force and effect. He refused to make a deed or deliver his abstract, and the appellants filed their bill in this case in the circuit court of Jefferson county against him and the West Frankfort Coal Company, Jesse Dimond, D. M. Parkhill and John D. Hirons, owners or agents of the West Frankfort Coal Company, praying for a specific performance of the option contract. The bill was answered with denials of practically everything averred, and the chancellor heard the cause and dismissed the bill for want of equity, at the costs of the appellants.

The lands were not correctly described in the option, and the bill prayed for a reformation conforming to the agreement. On that question there was no dispute and the appellants were entitled to the reformation prayed for.

It was argued with great vehemence at the bar that there was no equity in the bill because the appellants had not invested anything and did not intend to purchase the lands for themselves but were only promoters, obtaining options for the purpose of disposing of them at a profit if they were able to do so, and for that reason were not entitled to any consideration. Taking the options was a per-

fectly legitimate business transaction, and the fact that the appellants would only accept the options in case coal was found and they could dispose of them with a profit is of no importance whatever on the question of their rights.

It is also argued that the decree was right because the bill did not allege that the appellants were able to comply with the option on their part. The bill alleged that they were ready, willing and anxious to comply with the option and to pay for the property the consideration therein expressed, and they offered to purchase and to pay such consideration for the coal, gas and oil. They could not be ready without being able, and they offered to perform on their part. The bill was answered and no question was made of its sufficiency. The proof showed that the appellants were ready, able and willing to perform on their part, as they had offered to by the bill, and the objection is groundless.

It is further contended that the option was void because oil and gas not discovered and located are not the subject of a conveyance. That question has no relation to the coal, and in *Bruner* v. *Hicks*, 230 Ill. 536, it was held that a conveyance of gas and oil, with the right to prospect for and mine the same, gave a present vested right to go upon the land for the purpose of prospecting and mining and securing and marketing the oil when discovered. Whether oil and gas while in the earth are subject to a separate ownership from the surface or not would make no difference to the appellees. If a deed, when made, would convey nothing but the coal, that fact would concern only the appellants and not the appellees.

The option recited a consideration of one dollar, but no consideration was in fact paid, so that the option was subject to be withdrawn at any time before acceptance and amounted only to a continuing offer of sale during the eighteen months after it was made. If a consideration for an option is paid and a time fixed for the exercise of the option it cannot be withdrawn during that period, but if

there is no consideration it may be withdrawn upon notice given before acceptance. A contract is not complete without the mutual assent of the parties, and so long as the option remains open it imposes no obligation upon either party, but if accepted before withdrawn the offer is changed into a binding promise. (*Carter* v. *Love,* 206 Ill. 310; 6 R. C. L. 604; 13 Corpus Juris, 293.) No notice was given to the appellants of the withdrawal of the offer, and there are some cases holding that a sale to another person of real property covered by an option amounts to a revocation. *Dickinson* v. *Dodge,* L. R. 2 Ch. Div. 463, is one of those cases where an offer was to be left open until Friday at nine o'clock A. M., and before the expiration of the time the property was sold to another. That case was cited by this court in *McCauley* v. *Coe,* 150 Ill. 311, on the right of withdrawal before acceptance, but the decision that a conveyance to another without notice was a withdrawal had nothing to do with the case in which it was cited. In that case premises were leased for one year with an option to purchase on full payment of the rent reserved, and a further sum, with interest, at certain specified dates. It was held that the option was more than a mere offer of the lessor which he was at liberty to withdraw at any time before acceptance but was based on a valuable and sufficient consideration. The payments were not made and the lease was surrendered and the landlord took possession. Neither the lessee nor those claiming under him accepted the offer or did any act evidencing an intention to accept it for nearly three and a half years after the termination of the option. The lease had been surrendered and the landlord had taken possession and there was no remaining right to accept the option. The case of *Warren* v. *Richmond,* 53 Ill. 52, does not tend to sustain the claim of appellees. That was a bill for the specific performance of a contract for the conveyance of real estate where time was of the essence of the contract. The purchase money was not paid and the origi-

nal agreement was canceled and abandoned, and it was said that if a declaration of forfeiture was necessary, the conveyance to another was a sufficient declaration. *Bostwick v. Hess,* 80 Ill. 138, was also a case where the payment of the purchase money within a specified time was of the essence of the contract and non-compliance with the condition was a forfeiture of any right under the contract. The sale of the land to another after the expiration of the time for payment was regarded as sufficient evidence of the forfeiture. All those cases were where the time allowed had expired, and nothing said in any of them applies to this case. Whether the rule claimed by appellees ought to be applied in any case, an application of it to the facts in this case, in which the purpose of the option and the understanding of the parties were that the appellants were to endeavor to put themselves in a position to accept the option by interesting some coal company and they were endeavoring to do so, would be so unjust that it cannot meet with our approval.

The option provided that the deed should make provision for taking such portion of the surface of the land as was necessary for the purpose of the mining rights conveyed, but the surface so selected should, when occupied, be paid for at the rate of $150 per acre and the full cash value of permanent improvements, if any. It is contended that on account of this provision the contract was subject to the rule against perpetuities by giving the appellants the right to purchase so much of the surface as they might require at any time. It is true that an agreement to sell real estate at any time in the future when a party may choose to buy it is void for remoteness under the rule against perpetuities, but this contract was not of that nature. The conveyance was to be of the coal, oil and gas under the land, with the right to mine and remove the same, and when anything is granted, all the means to attain it and all the fruits and effects of it are granted also, and pass, together with

the grant of the thing itself, without any words to that effect. (Sheppard's Touchstone, 89; 2 Blackstone's Com. 36; 2 Washburn on Real Prop.—2d ed.—662; *Chicago, Rock Island and Pacific Railway Co.* v. *Smith,* 111 Ill. 363.) Where a grant is made for a valuable consideration it is presumed that the grantor intended to convey and the grantee expected to receive the full benefit of it, and therefore the grantor not only conveyed the thing specifically described, but all other things, so far as it was within his power to pass them, which were necessary to the enjoyment of the thing granted. The deed, when made, would not only pass the coal, oil and gas, with the right to mine and remove the same, but also the right to enter upon and use so much of the surface of the land as might be necessary to the enjoyment of the property and rights conveyed, and the agreement was merely that the land taken for such use should be paid for, when located, at the rate of $150 an acre. It was not within the rule against perpetuities.

The option contained a provision that Inglett would give a deed containing provisions used for similar property in Franklin and Jefferson counties and also provisions satisfactory to the appellants. That was an agreement to make a deed, with provisions consistent with and within the general terms of the option, satisfactory to the appellants and in the form used for similar property in Franklin and Jefferson counties. Such an agreement could be made definite and certain by proof of a form of a deed containing provisions uniformly used in conveying coal, oil and gas in those counties. The appellants offered in evidence a blank form of deed which was in use in Franklin and Jefferson counties, but the evidence was that there was no established and uniform form of deed so used, and a great many deeds were offered in evidence by the appellees of different forms and containing different provisions. To entitle a party to specific performance of a contract it must be so certain and unambiguous in its terms and in all its parts that the court

can require the specific thing contracted for to be done. (*Hamilton* v. *Harvey*, 121 Ill. 469; *Koch* v. *National Union Building Ass'n*, 137 id. 497; *Tryce* v. *Dittus*, 199 id. 189; *Schenck* v. *Ballou*, 253 id. 415.) Contracts are continually made in which each party relies, as to details, upon the sincerity, honesty, integrity and personal character of the other party and his recognition of his obligation and willingness to perform his contract, and business, generally, could not be carried on and contracts made on any other basis; but if a party refuses to keep his obligation and perform his contract and specific performance is asked for, the court must be able to give to the complainant the specific thing contracted for. This is a case of that kind, where a party to a contract having the proper sense of business integrity and the obligation assumed could and would have performed the contract by making a deed within the terms of the option, but in which the court, for want of a definite statement of the provisions to be inserted in the conveyance, could not compel specific performance.

Counsel for appellants say that any further provisions in a deed from Inglett than those conveying by warranty deed the coal, oil and gas as specified in the contract could be waived by them, which is true, but there was no waiver. The bill set forth the option and prayed for a performance of it and that Inglett be required to execute a deed as provided in the option. The appellants did not in their written acceptance specify any form of deed but notified Inglett that they accepted the option under the terms and conditions of the same. The form of deed presented at the trial was not offered to Inglett at any time as the one with which appellants would be satisfied, and while a contract may be interpreted according to established and uniform usage, the evidence did not bring the form of deed or its provisions within that rule.

The decree is therefore affirmed.          *Decree affirmed.*