*In re* PAYMENT OF TAXES UNDER PROTEST BY FRANK H. SCHNIEDERJON FOR THE YEARS 1983, 1984 and 1985, PAYABLE IN 1984, 1985 and 1986.

Fifth District   No. 5—87—0618

Opinion filed March 30, 1989.

Frank H. Schniederjon, of Effingham, appellant *pro se*.

Richard Runde, State's Attorney, of Effingham (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The objector, Frank H. Schniederjon, paid taxes under protest for the years 1983, 1984, and 1985, payable in 1984, 1985, and 1986, on improvements he made upon property owned by the Effingham Water Authority and leased to him. The objector maintains that the improvements he has placed on the property as lessee are personal property and, as such, are not subject to taxation. The case was submitted to the trial court upon a stipulation of facts and briefs of the parties. The trial court found in favor of the collector and against the objector. The objector now appeals raising a single issue for review: whether, as stated in his reply brief, the improvements to the leasehold "remain personal property or become part of the real estate under all the facts so that the same could be taxed." The objector expressly makes no objection to taxes levied upon the leasehold but objects to the taxation of improvements placed by him upon the leased premises after the inception of the term of the lease.

In the trial court the parties stipulated that the objector "has placed [on the leased premises] a four-room summer cottage constructed on a concrete slab and has also constructed thereon a boathouse and a shed which is on skids." The improvements are not further described elsewhere in the record. The parties stipulated further:

"3. That the Effingham Water Authority is a public corporation in the County of Effingham and State of Illinois, and its duties and authorities consist primarily of providing a public water supply for the City of Effingham and has acquired real estate, which real estate is not subject to tax because Effingham Water Authority is a public corporation, for a large artificial lake which is commonly known as Lake Sara, including for its protection a surrounding zone of marginal shore land, and the leasing of the borders of such shore land for the protection of the land from pollution, undue erosion and other injury, prohibiting forestation, the development of suitable vegetation and the improvement, care and maintenance of the premises. That the lease is issued by the Effingham Water Authority for the furtherance and in aid of said public purposes, all as provided in the provisions of said Effingham Water Authority lease.

4. That at the time of the execution and delivery of the lease, a copy of which is attached hereto, the premises were unimproved, and whether or not such leasehold was to be improved by the lessee was within the discretion of the lessee (known as 'custodian' in the lease)."

The lease in question was executed on January 12, 1962, for a term of

99 years from the date of execution of the lease, which provides in article 2 for the making of improvements upon the leased lot and that "[s]uch dwelling house and appurtenances shall be and remain the property of the Custodian, with the right to remove the same."

In an extensive and well-reasoned order entered on the record sheet, the trial court denied the tax objections, finding in part as follows:

> "That under Illinois law, persons dealing with land and improvements may consider buildings and improvements as personalty for their own purposes, but such treatment, as between individuals[,] does not change the essential characteristics of buildings as realty. ***
>
> In leasing the lakeshore area of Lake Sara, the lease states, in behalf of the Effingham Water Authority, that it was entering into the lease to protect the lake from pollution, undue erosion, and other injury. The lease contemplates that dwelling houses and appurtenances would be located on said leaseholds though no lessee (custodian) was required to erect any building or structure, and that lessee could remove improvements. Between the Effingham Water Authority and the lessee, the lease appears to treat the improvements as personalty.
>
> The improvements erected upon the leasehold, rented by the Effingham Water Authority lease, are such as are contemplated to be placed upon the leasehold. The improvements are adapted to the use to which the leasehold was contemplated to be devoted. Certainly the lessee did not lease the leasehold to simply provide erosion control and pollution control for Lake Sara— but to enjoy the leasehold for lawful residence and recreation. 'The terms "real property" and "real estate" include not only land but also "all buildings, and other permanent fixtures" located "thereon." (Ill. Rev. Stat. 1973, ch. 120, par. 432.13[)].'
> *In re Objections of Hutchens*, 34 Ill. App. 3d 1039.
> ***
>
> The improvements on this leasehold are real estate for purposes of taxation and may be taxed with the leasehold. The fact that the lease from the Effingham Water Authority may indicate that the parties attempt to consider such improvements as personal property, does not change their taxable characteristics from that of real estate—and the assessment and taxation of said improvements does not violate our Constitutional prohibition of an ad valorem personal property tax.

The leasehold was created by the subject lease and is clearly

and admittedly taxable. The lease clearly contemplates and regulates improvements and/or appurtenances on said leasehold, to be thereafter affixed or constructed. The buildings and improvements herein are real estate and properly assessed and taxed as real estate together with the leasehold."

██ Initially the collector asserts that the objector's brief should be dismissed for its failure to conform to the requirements of Supreme Court Rules 341(e)(1), (e)(3), and (e)(6) (107 Ill. 2d Rules 341(e)(1), (e)(3), (e)(6)) concerning the setting forth of points and authorities, the issue presented for review, and the statement of facts. In this regard we have considered the arguments of the collector and of the objector in his reply brief, and we decline to dismiss the appeal.

The objector contends that, because section 26 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 507) does not refer to improvements that may be placed on leased property at the option of the lessee after the inception of the term of the lease, the provisions of section 26 "do not effect [sic] the assessment of taxes on improvements placed on the leased property in question." Section 26 provides in pertinent part:

"[W]hen real estate which is exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." (Ill. Rev. Stat. 1987, ch. 120, par. 507.)

The objector maintains that the improvements in question are personal, not real, property and are,. hence, not taxable, in accord with section 5, subsection (c), of article IX of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §5(c)), which abolished all ad valorem personal property taxes.

The objector relies particularly upon *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 415 N.E.2d 1070, which involved the appeal of a judgment imposing a mechanic's lien against real estate. In *Kreisman* the appellants contended that certain items of restaurant equipment installed on the premises were trade fixtures and, therefore, not lienable. The court in *Kreisman* listed three factors to be considered in the determination of whether an article installed in a building is lienable or is to be deemed a trade fixture not subject to a mechanic's lien; preeminent among the three factors, the court said, is the intent of the parties as to whether the articles become a part of the realty. On the basis of *Kreisman*, the objector argues that "the intent of the parties as gathered from all the

circumstances of the case control[s] the question of whether or not the improvements placed on said real estate [after the inception of the term of the lease] become part of the real estate or remain personal property." On the basis of the intent of the parties to the instant lease, the objector attempts to distinguish *In re Tax Objections of Hutchens* (1976), 34 Ill. App. 3d 1039, 341 N.E.2d 169, cited by the trial court in its order denying the instant tax objections, and *Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, 310 N.E.2d 667, followed by the reviewing court in *Hutchens*.

The objector stresses that "under the terms of the lease, a clear intent is expressed to retain improvements placed thereon by lessee as personal property." However, as was said in *Hutchens* (34 Ill. App. 3d at 1041-42, 341 N.E.2d at 171),

"[V]alid business and economic reasons exist for recognizing 'bookkeeping practices' and agreements between landlord and tenant and seller and purchasers concerning whether buildings and machinery shall be considered personal property and whether the same may be removed as far as the rights of the parties *** are concerned. We agree with the ruling in *Ayrshire Coal Co.*, however, that such practices and agreements are no longer controlling as far as property taxes are concerned."

In *Hutchens* the objector purchased a cabin that was transported to premises leased by the objector. The lease provided that the objector might remove the cabin at the termination of the five-year lease. The trial court in *Hutchens* had found the cabin to be sufficiently attached to the land to have "become a part of it" (*Hutchens*, 34 Ill. App. 3d at 1040, 341 N.E.2d at 170) by virtue of the placement of the cabin on concrete blocks and a provision of the lease for plumbing connections between the cabin and a septic tank and a well. The trial court's finding that the cabin was part of the real estate was not, the court said on review, contrary to the manifest weight of the evidence. Recently, following *Hutchens*, the court in *Decatur Sports Foundation v. Department of Revenue* (1987), 156 Ill. App. 3d 623, 509 N.E.2d 1103, determined that a stadium, bleachers, press box, restroom facilities, and other improvements in question constituted part of the real property despite lease provisions allowing their removal.

In *Ayrshire* heavy mining machinery and equipment was claimed by the taxpayer coal company to be personal property but was held by the court of review to be real property. A conditional sales agreement between the coal company and the designer and builder of some of the machinery had provided that no item furnished by the latter

should be considered a. fixture and that any part might be separated from the real estate to which it was attached for the purpose of repossession. In reaching its decision the court in *Ayrshire* (19 Ill. App. 3d at 46, 310 N.E.2d at 671), reasoned in part: "Where property is adapted to the use to which the realty is devoted the use thereof in such manner furnishes such strong evidence of intent to make it a part of the freehold as not to be overcome by bookkeeping practices." Similarly, in *United States v. 19.86 Acres of Land* (7th Cir. 1944), 141 F.2d 344, the court held a building to be real property and subject to condemnation despite a contract of sale covering the materials of which the building was constructed and designating those materials as personal property. Having considered certain Illinois cases, the court in *19.86 Acres* (141 F.2d at 348) observed that "parties may for their own purposes consider a building as personalty. This does not mean, however, that it loses its essential character as realty." The court took note of the "general and perhaps universal rule in Illinois and elsewhere that a building permanently connected with the soil is real property." *19.86 Acres*, 141 F.2d at 347.

■■ As defined in the Revenue Act of 1939, the terms "real property" and "real estate" include not only the land itself but also "all buildings, structures and improvements, and other permanent fixtures, of whatsoever kind, thereon." (Ill. Rev. Stat. 1987, ch. 120, par. 482(13); *Hutchens*, 34 Ill. App. 3d 1039, 341 N.E.2d 169.) Here, according to the parties' stipulation of facts, the objector placed on the leased property a four-room summer cottage "constructed on a concrete slab" together with a boathouse and a shed. The improvements erected here, as the trial court noted, are such as are contemplated to be placed upon the leasehold and are adapted to the use to which the leasehold was contemplated to be devoted. The lease expressly anticipates in article 2 the construction of a "dwelling house and appurtenances" on the property and, in article 3, provides that the custodian, or lessee, shall pay "all taxes that may be levied against said premises for improvements thereon ***." Pursuant to article 6 of the lease, the custodian has the power to mortgage the leasehold "together with all improvements of the Custodian now or hereafter on the leased premises." Article 16, concerning "Use Restrictions," provides in part, in subparagraph "A," that "[a]ll land or lots are to be used only for single family residences and the usual accessory buildings and uses including private garages, boat piers, and swimming piers or platforms." Article 16 provides further for the location of wells and for septic tanks, specifying in subparagraph "O" that "[n]o residence shall be constructed without indoor toilet facilities and adequate facili-

ties for the disposal of sewerage "and in subparagraph 'P' that [w]henever a system for the collection, treatment and disposal of sanitary sewerage is provided within a subdivision or portion thereof, all residences within 300 feet of such sewer line shall connect thereto within six months after the completion of the line." Article 17 of the lease provides for a specified rate of payment to the custodian for "the actual cost of all improvements placed by the Custodian on the premises with the Authority's approval" in the event the Authority should require the leased premises to be used exclusively for any public purpose inconsistent with the custodian's occupancy. Article 18 of the lease provides that at the expiration of its term, which is, as we have said, 99 years, the custodian, if not in default, shall be preferred over all others in the further leasing of the premises. In view of the facts as stipulated and the provisions of the lease, it was not against the manifest weight of the evidence for the trial court to conclude that, though the parties to the lease may, as between themselves, consider the buildings and improvements to be personal property, as evidenced by the lease provision allowing removal, the buildings and improvements on this leasehold are real estate for purposes of taxation.

■ The objector relies in part upon *In re Maplewood Coal Co.* (1904), 213 Ill. 283, 284, 72 N.E. 786, 786-87, wherein the court, in an appeal involving the assessment of certain property, held buildings constructed by the coal company upon leased land to be personal property, saying:

"If appellant leased the right to mine and operate certain mining rights owned by the [lessor], with the agreement that appellant should construct the buildings necessary thereto and upon complying with the conditions of the lease should have the right to remove the buildings, the latter were personal property and the property of [Maplewood] until it had been determined that [Maplewood] had forfeited its rights, when the buildings would become attached to and a part of the realty by reason of the forfeiture."

The collector points out correctly that mineral and surface estates are severable and, when severed, give rise to two estates subject to independent ownership and to separate taxation (*Miller v. Ridgley* (1954), 2 Ill. 2d 223, 117 N.E.2d 759); severance of the mineral estate by lease or deed carries with it the right to use so much of the surface of the land as is necessary to enjoyment of the right acquired pertaining to the minerals (see *Threlkeld v. Inglett* (1919), 289 Ill. 90, 124 N.E. 368). In *Maplewood* (213 Ill. at 285, 72 N.E. at 787), "[b]y the purchase of the mining rights by [Maplewood] there was a separation of

such rights from the land." In the instant case there has been no severance of the surface and mineral estates; hence, *Maplewood* is inapposite here.

■ With regard to the objector's contention that the provisions of section 26 of the Revenue Act of 1939 have no effect upon the assessment of taxes on improvements placed upon the property after the inception of the lease, he argues that section 26 must be strictly construed because it is "in degradation of the common law," under which a leasehold interest was deemed to be personal, rather than real, property. However, we consider the argument not well taken in view of the statutory scheme of the Revenue Code of 1939 providing for periodic revision of the assessment of listed property. See Ill. Rev. Stat. 1987, ch. 120, pars. 513, 524, 525.

Accordingly, we hold that the improvements to the leasehold in question are real property subject to taxation as such.

Affirmed.

WELCH, P.J., and HARRISON, J., concur.