**ARCLAR COMPANY, an Illinois Corporation, Plaintiff,**

v.

**James Kenneth GATES, Defendants.**

**No. Civ. 97–4335–JLF.**

United States District Court,
S.D. Illinois.

Aug. 21, 1998.

Robert C. Wilson, Wilson & Cape, Harrisburg, IL, John E. Rhine, Rhine, Ernest, Mount Carmel, IL, for Plaintiff.

James W. Morris, Barrett, Twomey, Carbondale, IL, for Defendants.

### MEMORANDUM AND ORDER

FOREMAN, District Judge.

Before the Court is defendant's Motion to Dismiss for Failure to State a Claim (Doc.6). Plaintiff has filed a response (Doc.12). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Plaintiff, Arclar Company, has sued James Gates for specific performance (count I) and for an injunction (count II) regarding certain land in Saline County. Specifically, Arclar seeks specific performance of an option to purchase a certain surface area of Gates' land that Arclar claims is necessary for its coal mining operation. Arclar also seeks an injunction because Gates is allegedly preventing Arclar from using an easement that Arclar claims to have acquired by deed. The original action was brought in Saline County. Gates removed it to this Court based on diversity and an amount in controversy in excess of $75,000.

### I. Background.

Once upon a time, several members of the Choisser family, (specifically, William Choisser, Kate Choisser, De Launt Choisser, and Willie Choisser), held title to 214 17/20 acres in Saline County. In 1905, in a document called "Warranty Deed to Coal," the Choissers conveyed all of the coal underneath the surface of the 214 17/20 acres to O'Gara Coal Company (Doc. 2, Exh. A). The Warranty Deed to Coal also granted O'Gara Coal Company:

> ... the right to mine, dig, ventilate, drain and remove the coal therefrom, and together with the right to use the passageways and entries under the said premises for the purpose of hauling, mining and removing the coal above conveyed, and all other coal not belonging to or hereafter to be acquired by the said O'GARA COAL COMPANY, its successors and assigns, and for a "Right-of-Way" over the same, or such portion thereof as may be necessary for conveying said coal to market; ...

*(Doc. 2, Exh. A).*

The parties refer to this bundle of rights as a "Conveyor Easement." Finally, the

Choissers also granted O'Gara Coal Company, (and its heirs, successors, and assigns), the right at any time to purchase for $100 per acre the portion of the land's surface necessary to mine and remove the said coal. Specifically, the Choissers agreed that:

The said grantors for themselves, their heirs, executors, administrators and assigns, as a covenant running with the land and the property conveyed, further agree to sell to the O'GARA COAL COMPANY, its successors or assigns, at any time hereafter, such portion of the surface of the premises hereinabove described as may be necessary for the erection of tipple, buildings, powerhouses, railroad tracks, switches and other improvements necessary for the mining and removing said coal at the price of One hundred ($100.00) Dollars per acre, and to·convey the title of said surface to said O'GARA COAL COMPANY, its successors and assigns, by good and sufficient Warranty Deed...

*(Doc. 2, Exh. A).*

By mesne conveyances, Arclar acquired the interests that O'Gara Coal Company had acquired by the Warranty Deed. In other words, Arclar has acquired: 1) the coal; 2) the Conveyor Easement; and 3) the right to purchase the surface necessary to mine the coal.

Arclar claims that it is necessary to construct a conveyor over and across the Conveyor Easement to convey the coal to market. Although Arclar has the Conveyor Easement, it also claims that it needs 3.442 acres of the surface to construct a high voltage power line and water line to service the conveyor. Gates owns 33 acres, including the 3.442 acres allegedly needed by Arclar. Gates acquired these 3.442 acres with notice of O'Gara's right to buy the surface. Specifically, the deed stated that Gates' 3.442 acres was:

Subject to the rights of O'Gara Coal Company its successors and assigns, relating to purchase of the surface and ownership of a right to explore for coal attached as Exhibit A and subject to all rights which are appurtenant to ownership of coal, expressed and implied.

(Doc. 2, p. 3).

As noted, Arclar seeks specific performance of the option to buy and an injunction preventing Gates from interfering with Arclar's use of the Conveyor Easement. Gates has filed a motion to dismiss based on various grounds discussed below.

## II. *Standard of Review.*

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assoc., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). A plaintiff is required only to provide a short and plain statement of the claim "that will give the defendant fair notice of the claim and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (*quoting Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)). The Court must accept pleaded conclusions as true. *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992). The sole issue when reviewing a motion to dismiss is whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (*citing Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. *Motion to Dismiss.*

Mr. Gates' Motion to Dismiss is based on six (6) grounds which are addressed below.

### 1) *Arclar's Claims are Not Barred by Illinois' 75–year Statute of Limitation.*

Gates argues that Arclar's claims are barred by Illinois' 75–year statute of limitation, 735 ILCS 5/13–114. This statute provides that:

§ 13–114 Seventy–five year limitation. No deed, will, estate, .... relating to or affecting the title to real estate in the State of Illinois, which happened, was administered, or was executed, dated,

delivered, recorded or entered into more than 75 years prior to July 1, 1872, or such subsequent date as the same is offered, presented, urged, claimed, asserted, or appears against any person hereafter becoming interested in the title to any real estate, or to any agent or attorney thereof, shall adversely to the party or parties hereafter coming into possession of such real estate under claim or color of title or persons claiming under him, her or them, constitute notice, either actual or constructive of any right, title, interest or claim in and to such real estate, or any part thereof, or be, or be considered to be evidence or admissible in evidence or be held or urged to make any title unmarketable in part or in whole, or be required or allowed to be alleged or proved as a basis for any action, or any statutory proceeding affecting directly or indirectly the title to such real estate.

*735 ILCS 5/13–114.*

Gates argues that this statute bars any use or enforcement of a deed older than 75 years. Thus, according to Gates, Arclar's claimed easement and right to buy a portion of the surface to use that easement are barred because they originate from a deed dated 1905.

Gates' argument must fail for several reasons. First, the statute is inapplicable. The purpose of the statute is to prevent clouds on title from lingering for more than 75 years. It applies to competing chains of title, adverse interests, and the like where the title to the land is at issue or could be affected. Specifically, the statute decrees that "No deed . . . offered . . . against any person . . . becoming interested in the title . . . shall adversely to the party hereafter coming into possession of such real estate under claim or color of title . . . constitute notice, either actual or constructive, of any right, title, interest . . . in . . . or be considered to be evidence or admissible in evidence . . ." *735 ILCS 5/13–114.* By its own terms, the statute applies when one of the parties asserting an interest in the land does so by "claim or color of title." *Id.*

Claim or "color of title" means:

The appearance, [or] semblance . . . of title. Also termed "apparent title." Any fact, extraneous to the act or mere will of the claimant, which has the appearance, on its face of supporting his claim of a present title to land, but which, for some defect, in reality falls short of establishing it.

*Black's Law Dictionary* 241 (5th ed.1979) (*citations omitted*); *see also Anoweurth v. Burlingin*, 1 F.Cas. 1036, 1037 (C.C.D.Ill. 1848) ("The court defined the 'claim and color of title made in good faith' under this law, to be such a title as in law would pass the estate prima facie, if a better title be not shown").

■ This is not a case involving "claim or color of title." Neither Arclar or Mr. Gates is seeking to assert, by claim or color of title, the same interest in the same property. Mr. Gates simply took title to his acreage subject to the Conveyor Easement and the option to purchase the surface necessary to mine the coal. By the same token, Arclar holds title to the coal, the Conveyor Easement and the option to purchase, and is simply seeking to exercise that option. Neither party is asserting by claim or color of title the same interest in the same property. Accordingly, by its own terms, the 75–year statute of limitation is inapplicable.

■ Secondly, even if the statute did apply to the facts at bar, the statute also provides an exception. This exception states that:

The provisions of this Section shall not apply to or operate against . . . any person who during the entire period herein permitted for reassertion of title, or prior thereto, has not had the right to sue for and protect his or her claim, interest or title.

*735 ILCS 5/13–114.*

O'Gara Coal Company acquired the coal, the easement, and the option to purchase in 1905. Arclar acquired these interests by mesne conveyances. Although the Complaint does not specify when Arclar acquired these interests, Arclar's Complaint does allege that it is necessary to use the Conveyor Easement and surface to convey the coal to market. Arguably, Arclar has not needed the easement or surface until recently and

therefore, has not had the right to sue for the entire limitation period.

When reviewing a motion to dismiss, the sole issue is whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (*citing Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accordingly, even if the 75–year limitation did apply to this case, it appears from the Complaint that Arclar has not had the right to sue for the requisite period time period. For these reasons, Arclar's claims are not barred by Illinois' 75–year statute of limitation.

### 2) Arclar's Claims are Not Barred by the Rule Against Perpetuities.

■ Gates argues that Arclar's claims are barred by the Rule Against Perpetuities. Illinois courts have noted that an option to purchase real estate is subject to the Rule Against Perpetuities. *See e.g., Warren v. Albrecht,* 213 Ill.App.3d 55, 157 Ill.Dec. 160, 571 N.E.2d 1179, 1180 (5th Dist.1991). The Illinois Supreme Court, however, has noted that the right to purchase surface rights is not subject to the rule against perpetuities when the owner of the right requires the surface in order to remove minerals already owned. *Threlkeld v. Inglett,* 289 Ill. 90, 124 N.E. 368 (1919).

In *Threlkeld,* an option within a deed provided that the surface should be conveyed at the rate of $150 per acre if necessary for the purpose of the mining rights conveyed. The Illinois Supreme Court specifically rejected the Rule Against Perpetuities contention by stating that:

> The conveyance was to be of the coal, oil, and gas under the land, with the right to mine and remove the same, and, when anything is granted, all the means to attain it and all the fruits and effects of it are granted also, and pass, together with the grant of the thing itself, without any words to that effect. \*\*\* Where a grant is made for a valuable consideration it is presumed that the grantor intended to convey and the grantee expected to receive the full benefit of it,

and therefore the grantor not only conveyed the thing specifically described, but all other things, so far as it was within his power to pass them, which were necessary to the enjoyment of the thing granted. The deed, when made, would not only pass the coal, oil, and gas, with the right to mine and remove the same, but also the right to enter upon and use so much of the surface of the land as might be necessary to the enjoyment of the property and rights conveyed, and the agreement was merely that the land taken for such use should be paid for, when located, at the rate of $150 an acre. It was not within the rule against perpetuities.

*Threlkeld,* 124 N.E. at 371.

*Threlkeld* was decided in 1919. It has been cited with approval by the Illinois Supreme Court in *Jilek v. Chicago, Wilmington & Franklin Coal Co.,* 382 Ill. 241, 47 N.E.2d 96, 98 (1943); by the Illinois Appellate Court in *In re Payment of Taxes,* 181 Ill.App.3d 646, 130 Ill.Dec. 291, 537 N.E.2d 358 (5th Dist.1989); by the United States Court of Appeals for the Seventh Circuit in *Chicago, Wilmington & Franklin Coal Co. v. Minier,* 127 F.2d 1006, 1009 (7th Cir.1942); and *Chicago, Wilmington & Franklin Coal Co. v. Herr,* 127 F.2d 1010, 1012 (7th Cir.1942); and even by courts in other states; *see e.g., Quarto Mining Co. v. Litman,* 42 Ohio St.2d 73, 326 N.E.2d 676, 681 (1975). Accordingly, Arclar's claims are not barred by the Rule Against Perpetuities.

### 3) Arclar's Claims are Not Barred by Illinois' 40–year Statute of Limitation, 735 ILCS 5/13–118.

Gates argues that Arclar's claims are barred by Illinois' 40–year statute of limitation, 735 ILCS 5/13–118. This statute provides that:

> § 13–118 Forty year limitation on claims to real estate. No action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained in any court to recover any real estate in this State ... against the holder of the record title to such real estate when such

holder of the record title and his or her grantor immediate or remote are shown by the record to have held chain of title to such real estate for at least 40 years before the action is commenced, . . .

*735 ILCS 5/13–118.*

According to Gates, this statute bars any claim to real estate older than 40 years against an owner, who along with his predecessor in title, has held title for at least 40 years. Another section of the statute, however, Chapter 735 ILCS 5/13–120, expressly excludes mineral rights and interests appurtenant to mineral rights. Specifically, it provides that:

§ 13–120. Limitation on sections. Sections 13–118 through 13–121 of this Act shall not be applied:

\*    \*    \*    \*    \*    \*

4.   To bar or extinguish any separate mineral estate or any rights, immunities and interests appurtenant or relating thereto; . .

*735 ILCS 5/13–120(4).*

Accordingly, Arclar's claims are not barred by Illinois' 40–year statute of limitation.

### 4) Arclar's Claims are Not Barred by the Failure to Plead Privity of Contract with O'Gara Coal Company.

Gates also argues that Arclar's claims are barred by Arclar's failure to plead privity of contract with O'Gara Coal Company. Thus, according to Gates, Arclar has failed to establish that it has an interest in the subject property.

This argument is contrary to the plain allegations of the Complaint. The Complaint clearly states that Arclar acquired the interests obtained by O'Gara Coal Company. *(Doc. 2, p. 3, ¶ 6); see also (Doc. 2, p. 7, ¶ 5).* Accordingly, Arclar's claims are not barred by the failure to plead privity of contract with O'Gara Coal Company.

### 5) Arclar's Claims are Not Barred By Laches.

Gates argues that Arclar's claims are barred by laches. Laches has been defined as "such neglect or omission to assert a right as, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to the adverse party." *Holt v. Duncan*, 33 Ill.App.2d 477, 180 N.E.2d 36, 38 (4th Dist.1962) *(citing Holland v. Richards*, 4 Ill.2d 570, 123 N.E.2d 731, 735 (1955)). Such neglect or omission will operate as a bar in a court of equity. *Holt*, 180 N.E.2d at 38.

The defense of laches can be raised by a motion to dismiss if: (1) an unreasonable delay appears on the face of the pleading; (2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the defect. *Holt*, 180 N.E.2d at 38. No unreasonable delay appears on the face of the pleadings and Gates has not set forth any facts or legal authority to suggest that laches applies. Accordingly, Gates has not shown that Arclar's claims are barred by laches.

### 6) Arclar's Claims are Not Barred by the Rule Against Restraints on Alienation.

Gates argues that Arclar's claimed option to purchase violates the rule against restraints on alienation. It is true that a bare option to purchase or sell real estate exercisable outside the period of the rule against perpetuities is generally held to be void as an unreasonable restraint upon alienation. *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 326 N.E.2d 676, 679 (1975) *(citations omitted)*; *see also Drayson v. Wolff*, 277 Ill.App.3d 975, 214 Ill.Dec. 632, 661 N.E.2d 486, 492 (1 Dist.1996). Certain options, however, do not fall within this rule. For example, courts have held that an option to purchase land is valid as part of a long-term lease of that land. *Quarto Mining Co.*, 326 N.E.2d at 679 *(citations omitted)*. Similarly, options to purchase part of an overlying surface estate have been held not to violate the rule against restraint on alienation provided that they were granted for the purpose of mining the mineral estate. *Quarto Mining Co.*, 326 N.E.2d at 681–84 *(citing Buck v. Walker*, 115 Minn. 239, 132 N.W. 205 (1911); and *Threlkeld v. Inglett*, 289 Ill. 90, 124 N.E. 368 (1919)). Here, the option to purchase is clearly limited to the portion of

**824**

the surface necessary for mining the coal, (specifically, that "portion of the surface ... necessary for the erection of tipple, buildings, powerhouses, railroad tracks, switches and other improvements necessary for the mining and removing said coal"). Accordingly, Arclar's option to purchase is not void as a restraint on alienation.

## IV. *Conclusion.*

For the foregoing reasons, defendant's Motion to Dismiss (Doc. 6) is **DENIED**.

**IT IS SO ORDERED.**