[Cite as *Snyder v. Ohio Dept. of Natural Resources*, 2012-Ohio-4039.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RONALD SNYDER, et al., | ) | CASE NO.  11 JE 27 |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| OHIO DEPARTMENT OF NATURAL RESOURCES, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court, Case No. 09CV243.

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:    Attorney John Keller
Attorney Philip Downey
Attorney William Sieck
52 East Gay Street
P.O. Box 1008
Columbus, Ohio  43216-1008

For Defendants-Appellees:    Attorney Michael DeWine
Attorney General
Attorney Molly Corey
Attorney Tara Paciorek
Assistant Attorneys General
2045 Morse Road, Building D-2
Columbus, Ohio  43229

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  August 27, 2012

VUKOVICH, J.

{¶1} Plaintiffs-appellants Ronald Snyder and Steven Neeley appeal the decision of the Jefferson County Common Pleas Court which granted summary judgment in favor of defendants-appellees the Ohio Department of Natural Resources and the State of Ohio and thus disposing of the declaratory judgment action filed by appellants.

{¶2} The issue on appeal is whether strip mining on the state's land is permissible where the language of the deed provides, "The Grantors reserve all mineral rights, including rights of ingress and egress and reasonable surface right privileges." As the case law in Ohio requires the deed reserving mineral rights to clearly show the intent to allow strip mining, it appears the above language does not grant the right to strip mine the property.

{¶3} The other issue raised concerns whether the court properly declared the parties' respective rights when it granted summary judgment in the declaratory judgment action. Because the court filed not only a judgment entry but also a separate opinion, the declaration of rights is ascertainable. Accordingly, it seems that judgment was properly entered in favor of the state, and the trial court's decision can be affirmed.

## STATEMENT OF THE CASE

{¶4} In 1944, the grantor sold over 651 acres located in Brush Creek Township to the State of Ohio. This property became part of the Brush Creek Wildlife Area, which is overseen by the Ohio Department of Natural Resources (ODNR). Regarding the reservation of mineral rights, the only pertinent language in the deed states: "The Grantors reserve all mineral rights, including rights of ingress and egress and reasonable surface right privileges."

{¶5} In 2000, Ronald Snyder and Ralph Six received these mineral rights upon a Sheriff's Deed in Partition. They later met with ODNR to discuss their desire to strip mine part of the property. When ODNR refused to allow strip mining (also called surface mining) on the property, the two mineral rights owners filed a complaint against the state and ODNR seeking a declaratory judgment.

**{¶6}** Their complaint stated that the property contains valuable coal reserves which are thinly layered, making the only practicable method of extracting the coal by "surface mining and auger mining in a surface mining area." The complaint asked for a declaration that the "reasonable surface right privileges" language in the deed allowed them to strip mine a reasonable portion of the property. They asked for a declaration that approximately 10% of the property would be a reasonable portion of the property to surface mine.

**{¶7}** The complaint was voluntarily dismissed and refiled in May of 2009. Thereafter, Steven Neely was substituted as a party in place of Mr. Six. The state filed a motion for summary judgment in June of 2011, urging that case law requires a mineral rights reservation to include clear language if the right to destroy the surface is to be transferred as surface mining is inconsistent with the surface owner's rights.

**{¶8}** On September 7, 2011, the trial court ruled in favor of the state, granting summary judgment and dismissing the case with prejudice. The trial court held that the right to strip mine must be clearly expressed in the reservation of mineral rights. The court stated that the reservation of "reasonable surface right privileges" is not ambiguous as to whether strip mining is permitted, even if it could be ambiguous regarding other surface rights, because strip mining entails a catastrophic disruption to the surface. Thus, the court found that the extrinsic evidence presented by the plaintiffs in their response to summary judgment could not be used. The court alternatively stated that the evidence relied on to show the parties' intent at the time of the deed was inadmissible hearsay in any event.

**{¶9}** On September 26, 2011, the trial court filed a final judgment entry granting the State's motion for summary judgment and dismissing the case with prejudice based upon the opinion the court previously rendered. The plaintiffs-appellants filed a notice of appeal on October 25, 2011. This court ordered appellants to file a jurisdictional memorandum as to why they failed to appeal from the September 7 order. Appellants responded citing case law and the local rules of court. On December 27, 2011 this court found that the appeal was timely filed.

{¶10} The table of contents in appellants' brief lists numerous arguments, some of which could be construed as assignments of error, although not labeled as such. Moreover, the listed arguments are overlapping and mostly concern one issue: whether the deed is ambiguous as to strip mining. If we agree with appellants and find the deed ambiguous, they ask us to resolve which party should have the language construed in their favor and argue that the trial court improperly stated that the extrinsic evidence on the parties' intent was inadmissible hearsay. Finally, there is an issue with the form of the court's entry as appellants do not believe it clearly declares the rights as required in a declaratory judgment action. We thus separate our analysis into these three sections.

<u>DOES DEED CLEARLY IMPORT RIGHT TO STRIP MINE?</u>

{¶11} Appellants acknowledge that Ohio case law requires some expression of the right to strip mine in a mineral rights reservation. Appellants note, however, that this law does not require the deed to expressly include the words "strip mine" or "surface mine" as "magic language" before strip mining is permissible under a grant of mineral rights. Appellants argue that the deed's language is ambiguous and that what activity constitutes the exercise of "reasonable" surface right privileges is a question of fact as it is susceptible to more than one interpretation since a reasonable person could construe it as allowing strip and auger mining on a small, reasonable portion of the property.

{¶12} The state counters that it is established law that there must be a clear expression of the intent to reserve the right to strip mine in a mineral rights reservation. *See Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949 (1996); *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). The state concludes that a reasonable person could not construe the deed to allow total destruction of a considerable portion of the surface through strip mining merely because it permits reasonable surface right privileges incident to mining, which privileges exist by law in any case.

{¶13} Appellants attempt to distinguish *Skivolocki* and *Graham* from their case. Appellants note that the *Skivolocki* deed was written prior to the use of strip

mining in that county and contained language peculiar to deep mining. Appellants acknowledge, however, that the *Graham* case refused to distinguish *Skivolocki* on the basis that the *Graham* deed was drafted after the advent of strip mining. Appellants then argue that *Graham* is distinguishable by noting that the *Graham* deed involved language peculiar to deep mining and the deed revealed that the surface use was farming, which is inconsistent with strip mining, whereas the deed here did not reveal that the land would be used as a wildlife preserve.

{¶14} If a deed is clear and unambiguous, then its interpretation is a matter of law subject to de novo review. *See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). *See also Graham*, 76 Ohio St.3d at 313. The intent of the parties resides in the language they chose in the deed. *Graham*, 76 Ohio St.3d at 313. Extrinsic evidence is not admissible to show intent where the language is clear and unambiguous. *Id.* at 314. An ambiguous provision is one that has more than one reasonable interpretation. *Hacker v. Dickman*, 75 Ohio St.3d 118, 119-120, 661 N.E.2d 1005 (1996).

{¶15} In deeds involving mineral rights, the Supreme Court of Ohio has developed special rules of construction where the right to destroy the surface is claimed by the owner of the mineral rights. In 1884, the Ohio Supreme Court stated that it was well-settled that when mineral rights are severed from the surface, the owner of the mineral rights is entitled to only so much of the minerals he can get without injury to the superincumbent soil unless the language of the instrument "clearly imports" that it was the intention of the surface owner to part with the right of subjacent support. *Burgner v. Humphrey*, 41 Ohio St. 340, 352 (1884). The same obligation to protect the surface exists whether there is a conveyance of the surface retaining the minerals (as in the case at bar) or whether there is a conveyance of the minerals retaining the surface. *Id.* at 352-353.

{¶16} In *Burgner,* the owner of the mineral rights mined coal underground and removed all support from under the surface causing subsidence. The Court declared that the owner of the surface had the natural right to use his land "in the situation in which it was placed by nature" and thus had the right to have the surface integrity

maintained notwithstanding the grant of mineral rights to another. *Id.* A clause that the owner of the mineral rights can remove "all the mineral coal" does not mean that it can be taken away without regard to the effect of its removal upon the overlying soil. *Id.* at 354-355. The Court concluded that the intention to dispense with subjacent support should be "manifested by clear and unequivocal language" in the deed. *Id.* at 354. The surface owner's waiver of the right to surface support must appear by express grant or the deed must "clearly import such release." *Ohio Collieries Co. v. Cocke*, 107 Ohio St. 238, syllabus, 140 N.E. 356 (1923).

**{¶17}** In *Skivolocki*, a 1901 deed granted mineral rights, including the right to construct air shafts. *Slivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). The deed also stated "for any and all surface used" the mining company shall pay fifty dollars per acre. *Id.* at 246. The mining company, in pursuing strip mining on the land, argued that this clause granted the unqualified right to use the surface in any manner for the stated price or constituted a waiver a subjacent support. *Id.* at 247.

**{¶18}** The Court expressed that the right to strip mine and the right to subjacent support for the surface cannot co-exist. *Id.* at 248. The Court stated that a waiver of subjacent support is a prerequisite to finding a right to strip mine, but even such a waiver is not per se conclusive of the right to strip mine. *Id.* Strip mining "necessarily and unavoidably causes total disruption of the surface estate." *Id.* at 248-249.

**{¶19}** Notably, unless contrary language is used, a mineral estate carries with it the right to use as much of the surface as may be "reasonably necessary to reach and remove the minerals." *Id.* at 249, fn.1, citing 54 American Jurisprudence 2d, Section 389. Still, this "right to use" does not include the right to destroy it by strip mining. *Id.* at 249, fn.1, 251.

**{¶20}** The *Skivolocki* Court expressed that the mineral estate has a heavy burden of showing the right to strip mine and found that the company did not meet its burden of proof at trial. *Id.* at 251. The Court noted that the 1901 deed had language peculiarly applicable to deep mining and evidence showed that strip mining

was not used in that county until 1917. *Id.* at 251. The Court found that the $50 per acre charge for use of the surface did not provide a right to strip mine because reasonable use of the surface is already a right incident to mining and such right does not include the right to destroy the surface. *Id.* The Court concluded that strip mining was not permissible under the language of that deed.

{¶21} The most recent case cited by the parties is an expansion and clarification of *Skivolocki. See Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, syllabus, 667 N.E.2d 949 (1996). The deed in *Graham*, drafted years *after* strip mining became prevalent, granted "all" mineral rights, the right to enter in, on, and under the land for testing, mining, and removing minerals, the right to occupy that portion of the surface necessary for shafts, slopes, and tanks, and the right to use up to so many acres of the surface for a mine plant. The deed also provided damages for destruction of crops and fencing.

{¶22} The *Graham* Court held that the language, "all mineral rights" is insufficient to grant or reserve the right to strip mine. *Id.* at 316. The Court expressed that the deed's provision for damages to crops and fences and its mention of the use of the surface for roads or buildings would be unnecessary if the deed reserved the right to remove the entire surface by strip mining. *Id.* at 316-317. The Court pointed out a "patent incompatibility" of strip mining with separate ownership of the surface of the land. *Id.* at 317. The Court thus upheld the trial court's *grant of summary judgment* holding that there was no right to strip mine provided in the deed as a matter of law. In doing so, the Court concluded:

{¶23} "A deed which severs a mineral estate from a surface estate, and which grants or reserves the right to use the surface incident to mining coal, in language peculiarly applicable to deep-mining techniques, whether drafted before or after the advent of strip mining, does not grant or reserve to the mineral owner the right to remove coal by strip-mining methods." *Id.* at syllabus.

{¶24} The *Graham* Court characterized this as a clear rule to be applied *prior* to any determination of whether a deed reservation is ambiguous. *See id.* at 318 ("In view of our holding it is unnecessary to determine whether the contract at issue is

ambiguous so that consideration of extrinsic evidence would be appropriate"), 319 (noting that this "clear rule" announced would avoid the need for deed interpretation in cases with similar language).

**{¶25}** Although *Graham* is not directly on point as the language of that deed referred to certain deep mining features, its rationale and holdings are instructive here. First, the fact that the deed was drafted in 1944, after strip mining was utilized in the county, does not impose a presumption that strip mining was intended. *Id.* at 316. Second, the reservation of "all mineral rights" in the deed still does not grant appellants the right to remove those minerals by strip mining. *Id.* at 316. Moreover, we are still to be guided by the *Burgner* precedent that a holder of mineral rights cannot destroy the surface unless a waiver of the right to an intact surface is expressed in the deed. *Id.* at 315, citing *Burgner v. Humphrey*, 41 Ohio St. 340 (1884).

**{¶26}** The grant of mineral rights with "reasonable surface right privileges" does not "clearly authorize" strip mining. See *Burgner*, 41 Ohio St. at 354. It does not "clearly import" a release of the right to surface support. See *Ohio Colliers Co.*, 107 Ohio St. at syllabus.

**{¶27}** In fact, the language stating that "reasonable surface right privileges" are included in the reservation of mineral rights is a clear indication that strip mining was not contemplated, and itself is language commonly associated with deep mining. That is, an owner of mineral rights has the implied right to use as much of the surface as it reasonably necessary to reach and remove the minerals. *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 83, 326 N.E.2d 676 (1975), citing *Skivolocki*, 38 Ohio St.2d at 377, citing 54 Am. Jur.2d 389, Mines and Minerals, Section 210.

**{¶28}** Thus, "reasonable surface right privileges" are not just associated with a grant of deep mining; they are automatic rights. *See id.* *See also Belville Mining Co. v. United States*, 999 F.2d 989,994 (6th Cir.1993) (using a clause granting "only so much of the surface as is reasonable necessary" for mining as an example of language "peculiarly applicable to deep mining"). The deed in question granted reasonable privileges to use the surface; (notably, in the same clause granting

ingress and egress).  Strip mining is the total destruction of the surface rather the exercise of the "right to use" the surface incidental to mining, even if strip mining is the only practicable method of removing the coal.  And, case law provides the right to use as much of the surface as is reasonable to reach and remove the materials does not include the right to strip mine.  *Quarto Mining*, 42 Ohio St.2d at 83*; Skivolocki*, 38 Ohio St.2d at 251 ("the right to 'use' the surface cannot be reasonably construed as the right to destroy it").

{¶29}  "To construe the 'right to use' as including the right to strip mine would be to pervert the based purpose of a principles designed to mutually accommodate the owner of the mineral estate and the owner of the surface estate in the enjoyment of their separate properties."  *Skivolocki*, 38 Ohio St.2d at 249, fn.1.  With these special principles in mind, no reasonable person could find that a grantor's reservation of mineral rights including ingress, egress, and "reasonable surface right privileges" clearly imports the right to strip mine.

{¶30}  In conclusion, strip mining "necessarily and unavoidably causes a total disruption of the surface estate."  *Id.* at 248-249.  It inevitably causes surface "violence, destruction, and disfiguration."  *Graham*, 76 Ohio St.3d at 318 (comparing the surface during strip mining to a "battleground").  Strip mining is clearly more than the exercise of a "reasonable surface right privilege."  The surface right privilege exercised must be reasonable at each point that it is exercised.  Appellants' desire to exercise more than reasonable surface right privileges on only part of the property does not get around the fact that strip mining was not clearly reserved and that strip mining is a total disruption and elimination of that surface that is strip mined.  That the law requires reclamation thereafter does not diminish the fact that the original surface is gone and the fact that the existence of any surface is eliminated for a considerable time.  *See Graham*, 76 Ohio St.3d 311 (where the 1996 Court did not analyze the fact that reclamation would eventually take place).  *See also Belville Mining*, 999 F.2d at 994 (regulations requiring ultimate restoration of surface do not diminish force of case law regarding the surface violence of strip mining).

**{¶31}** The law states that strip mining is not a reasonable use of the surface as an incident to mining as strip mining is more than a "use". Thus, although the word "reasonable" can be a question of fact in some situations, it is a question of law in this case. *See Castle Props. v. Lowe's Home Ctrs., Inc.*, 7th Dist. No. 98CA185 (Mar. 20, 2000) (summary judgment permissible on whether Lowe's used "all commercially reasonable efforts").

**{¶32}** There is no positive indication that the right to strip mine was intended. In fact, the language shows that strip mining was not anticipated. We therefore uphold the trial court's decision granting summary judgment to the State based upon the plain language of the deed in conjunction with the special rules set forth in the strip mining precedent. Consequently, appellant's arguments on construing ambiguities, extrinsic evidence, and hearsay are overruled as moot.

<u>FAILURE TO EXPRESSLY DECLARE RIGHTS & FAILURE</u>
<u>TO ALLOW AUGER MINING</u>

**{¶33}** Appellants complain that the trial court granted summary judgment and dismissed the complaint with prejudice but did not actually declare the parties' respective rights as required in resolving a declaratory judgment action. They ask this court to remand for a clear declaration of rights.

**{¶34}** In doing so, they ask that (even if we find strip mining to be prohibited) we order the trial court to permit auger mining because the trial court's rationale all deals with strip mining, but auger mining does not destroy the surface above the mined area as it drills laterally into a hillside. However, strip mining is statutorily defined as including auger coal mining. R.C. 1513.01(S). *See also Skivolocki*, 38 Ohio St.2d at 247 (citing a case treating strip and auger mining the same). In any event, *appellants admitted that they would need to strip mine an area of a hillside in order to auger mine into the hill*, and they only sought the right to auger mine in the strip mined area. *See* Complaint at ¶ 13, 10, 17 ("surface mining and auger mining in a surface mining area"). As such, the same test would apply to both types of mining, and this argument is without merit.

{¶35} As for the form of the court's entry, the declaratory judgment statute provides that a person interested under a deed may have determined any question of construction or validity arising under the instrument and obtain a declaration of rights, status, or other legal relations under it. R.C. 2721.03. A plaintiff is entitled to a declaration of rights, rather than a dismissal, unless there is no real controversy between the parties or a declaratory judgment will not terminate the controversy. *Weyandt v. Davis*, 112 Ohio App.3d 717, 721, 678 N.E.2d 1191 (9th Dist.1996) (where court granted a motion to dismiss the action). Still, the court's form of entry is harmless if the court did in fact end up declaring the respective rights in its order. *Id.* at 721-722.

{¶36} A trial court should expressly declare the parties' rights in disposing of a declaratory judgment action. *Nickschinski v. Sentry Ins. Co.*, 88 Ohio App.3d 185, 189, 623 N.E.2d 660 (8th Dist.1993), citing *Waldeck v. N. College Hill*, 24 Ohio App.3d 189, 190, 24 OBR 280, 493 N.E.2d 1375 (1st Dist.1985) (a trial court does not fulfill its function in a declaratory judgment action when it disposes of the issues by journalizing an entry merely sustaining or overruling a motion for summary judgment without setting forth any construction of the document under consideration). In fact, it has been stated that the order granting summary judgment in declaratory relief action is not final if it does not declare rights. *See, e.g., Caplinger v. Raines,* 4th Dist. No. 02CA2683, 2003-Ohio-2586, ¶ 3; *Haberley v. Nationwide Mut. Fire Ins. Co.*, 142 Ohio App.3d 312, 314, 755 N.E.2d 455 (8th Dist.2001). *See also* R.C. 2721.02(A) (declaration may be affirmative or negative; declaration has the effect of a final judgment).

{¶37} The final judgment entry here contains no real declaration of rights as it merely stated that the State's motion for summary judgment was sustained and thus the case was dismissed with prejudice. However, in this case, we also have the trial court's opinion released prior to the final entry. This opinion did not merely grant summary judgment for the State and thus dismiss the complaint with prejudice. It also contained the issues presented, the parties' arguments, the court's interpretation of the law, and the court's analysis.

**{¶38}** Specifically, the trial court quoted the pertinent portion of the deed and framed the issue as whether the quoted reservation encompassed the right to strip mine. The court concluded that the mere reservation of mineral rights did not imply the right to remove the minerals by strip mining methods. Instead, in order for the grantor to reserve the right to strip mine, he must have expressly reserved that particular right. The court found that although what is a "reasonable" use of the surface could be ambiguous in some situations, when the question is whether strip mining is a reasonable surface privilege incident to mining, the phrase is not ambiguous, explaining how case law characterizes strip mining as the destruction of the surface not merely as the use of the surface. The trial court then concluded that appellants could not use extrinsic evidence as such evidence cannot be viewed when there is no ambiguity.

**{¶39}** Considering all of this combined with the grant of summary judgment in favor of the State and the dismissal of appellants' request for declaratory relief, the trial court effectively declared that appellants have no right to strip mine the land. Thus, although a clearer declaratory conclusion could have been drafted, any issue with the form of the declaration is harmless.

**{¶40}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.